| | |
|---|---|
| 75 | 61 |
| 78 | 622 |
| 75 | 61 |
| 80 | 98 |
| 80 | 183 |
| 75 | 61 |
| 82 | 663 |
| 75 | 61 |
| 86 | 246 |
| 75 | 61 |
| 91 | 324 |

Missouri Pacific Railway Company v. Pauline Lehmberg et al.

No. 2849.

1. **Res Gestæ.**—In an action by a widow and children of a railway employe whose death had been caused by a switch engine running upon him, it was competent to show in behalf of the plaintiffs that another man at the time of the injury, working by the side of the deceased, was injured by the backing switch engine.

2. **Testimony—Relevant.**—It being in issue whether a defendant railway company used a properly constructed switch engine at time of the injury, it was competent to show that at Marshall, on the road of defendant, regular switch engines were used, i. e., engines with sloping tank, so constructed to enable the engineers in charge to see persons on the track immediately before the engine when backing.

3. **Charge.**—The court in charging the jury informed them that plaintiffs sought a recovery on account of the negligence of the defendant in the use of an engine for

switching purposes which was unfit. In another part of the charge they were instructed "that defendant was not liable unless you believe from the evidence that the deceased did not know of the defective condition of the engine." *Held*, that as all the issues made by the evidence were submitted to the jury, defendant could not complain that the issues were not submitted by way of recital of the pleadings making the issues. The partial recital given was supplied by the subsequent matters given.

4. **Charge, Form of.**—The court charged: "If you believe from the evidence that the injury was caused both by the defective construction or unfitness of the engine for the purposes for which it was then used, and the negligence of the engineer and yard foreman combined with said defect in the engine, the defendant will be liable." *Held*, that therein no fact was assumed, but everything submitted was left to the determination of the jury.

5. **Charge—Repetition.**—The question of knowledge or want of it on part of the deceased of the defective engine having been once submitted clearly, it was not proper that it be repeated in connection with every other issue.

6. **Employe's Knowledge of Machinery.**—The law does not exact of the employe the use of diligence in ascertaining defects in machinery used by his employer in the business of the employment, but charges him with a knowledge of such only as are open to his observation.

7. **Same.**—The evidence failing to show that the deceased was aware of the different degrees of danger between the use of that causing the injury and one with a sloping tank, or that he understood the nature of the danger from the use of the square tank, a charge was properly refused that if there were any patent defects in the engine or tank and deceased knew or might have known of the same, and said defects caused or contributed to the injury, the jury should find for defendant.

8. **Verdict Not Excessive—Facts.**—A laborer 35 years old, earning $1.25 a day, was killed while in employ of a railway company, leaving a widow and two small children. The testimony showed he was "stout, healthy, and sober." *Held*, that a verdict of $10,000 for the widow and children for damages for his death was not excessive, so as to be ground for reversal.

APPEAL from Tarrant. Tried below before Hon. Chas. I. Evans, Special District Judge.

The opinion states the case.

*Finch & Thompson*, for appellant. — 1. The court erred in allowing so much of the testimony of witness John Brockner to go to the jury as related to any actual or threatened injury to one Woolford by the engine just before Lehmberg was hurt. Said testimony was irrelevant and not material to the issues of this case.

2. The court erred in allowing witness Dorsey to testify over defendant's objection that a regular switch engine was used in the yards at Marshall, because same was irrelevant, and the fact that another or different kind of engine may have been used at another point would have no bearing upon the question of defendant's liabilities in this case.

3. A charge of the court should present the issues made by the pleadings. The want of knowledge of the deceased was a material issue in the case, and hence the court, in making the statement complained of, stated a case not in accordance with the pleadings. Rev. Stats., art. 1317; Can-

non v. Cannon, 66 Texas, 682; Railway v. Tankersly, 63 Texas, 57; Railway v. Nixon, 52 Texas, 19; 2 Thomp. on Trials, sec. 2309.

4.   Upon charge of court.   [See opinion.]   Altgelt v. Brister, 57 Texas, 432; Railway v. Nixon, 52 Texas, 19; Railway v. Davidson, 61 Texas, 205; Railway v. Somers, 71 Texas, 700; Railway v. Myers, 55 Texas, 115; Railway v. Lempe, 59 Texas, 19; Railway v. Ryan, 69 Texas, 665; Railway v. McCarthy, 64 Texas, 632; Brown v. Brown, 71 Texas, 355; Railway v. Walker, 70 Texas, 126; 3 Wood's Ry. Law, 368–70; Rev. Stats., art. 1317; Railway v. Robinson, 73 Texas, 277.

5.   The court erred in refusing defendant's special charge, "If you believe from the evidence that there were any patent defects in the engine or tank, and that deceased knew, or might by ordinary diligence have known of same, and that said defects caused or contributed to the injuries complained of, then you are instructed that defendant can not be held liable."   Railway v. Dunson, 71 Texas, 70; Railway v. Ryan, 69 Texas, 665; Railway v. McCarthy, 64 Texas, 652; Railway v. Lempe, 59 Texas, 19; Brown v. Brown, 71 Texas, 355; Railway v. Walker, 70 Texas, 126; Railway v. Doyle, 49 Texas, 190; Lovejoy v. Railway, 125 Mass., 79; Railway v. Husson, 12 Am. and Eng. Ry. Cases, 241; 2 Thomp. on Neg., 1008; 3 Wood's Ry. Law, 370.

6.   A servant is bound to see for himself such risks and hazards as are patent to observation, and he not only assumes all risks ordinarily incident to such business, but also all open and visible risks, whether usually incident to the business or not.   Goff v. Railway, 36 Fed. Rep., 299; Brossman v. Railway, 6 Atl. Rep., 226; Killingham v. Railway, 18 Am. and Eng. Ry. Cases, 224; Railway v. Watson, 114 Ind., 20; Wilson v. Railway, 38 Morris, 326.

*Ball, Wynne & McCart*, for appellees, cited Railway v. Dorsey, 66 Texas, 148; Railway v. McNamara, 59 Texas, 255; Porter v. Railway, 71 Mo., 66; Jacobs, Bernheim & Co. v. Hawkins, 60 Texas, 4; Hildebrand v. Brewer, 6 Texas, 52; Hart v. Ware, 8 Texas, 115; King v. Gray, 17 Texas, 62; Brunswig v. White, 70 Texas, 504.

HENRY, ASSOCIATE JUSTICE. — This suit was brought by Pauline Lehmberg for the benefit of herself and the two minor children of herself and her husband Gustave Lehmberg, for damages growing out of the death of the husband and father while in the employment of defendant.

The petition charges that the said Gustave Lehmberg was engaged in repairing defendant's railroad track in the city of Fort Worth, and that while he was so engaged, without fault on his part, he was run over and killed by one of defendant's engines.

The petition alleges that the death was caused by a switch engine which

was unfit and dangerous to persons working in said yard, and that its defects were well known to defendant but unknown to deceased.

Defendant pleaded contributory negligence and negligence of fellow servants.

There was a verdict for plaintiffs for ten thousand dollars, divided between them equally, upon which judgment was rendered.

The evidence shows that the deceased was working with a shovel in repairing the " Y " of defendant's railroad in its yard in the city of Fort Worth. Some other hands were engaged in the same work, one only of them very near him.

His death was caused by an engine then being used in the yard for switching purposes.

It was a road engine, and had been brought into the yard not long before. It had a square tank. The evidence shows that when an engine with such a tank is backing, if the engineer controlling it is forty or fifty feet from a man on the track he can see him, but within ten, twenty, or thirty feet he can not see him if the engineer is standing on his engine.

The statement of facts shows, that as a general thing engines with sloping tanks are used for switching purposes by railroads. The object of having a sloping tank is to give the engineer a better view of the track and of the men that are working with the engine and on the track. A sloping tank is one that slopes from the front part of the tender and comes to a sharp point at the end farthest from the engine. A man on one of them can see another man who is standing on the ground until the tender is right up to him.

The engine was backing when it came in collision with the deceased. An employe of the railroad company was standing on a foot board on the rear end of the engine, but which was in front as the engine was then going. He was placed there for the purpose of giving warning to people who were on the track, and to give to the engineer proper signals for his guidance.

He could not from his position on the engine that was being used see the engineer or give him signals, and in order to do that he had to move to one side of the engine and lean out.

As the engine went on to the " Y," where the injury occurred, the whistle was blown and the bell was ringing.

The engineer, a witness for the defendant, testified: " When I got within about forty feet of the Front Street crossing I noticed a man working by himself, about fifteen feet north side of Front Street, smoothing off the track; when I noticed him he was looking right at me. I paid no further attention to him. I got on the crossing then, and got a signal from the section foreman on the bridge to slow up; that it (the bridge) was not ready for us to go over yet. I reversed my engine, and was nearly stopped, right on the crossing. I reversed her again, to let

her roll up a little closer to the bridge, and we rolled probably fifteen or twenty feet; the switchman jumped off behind and hallooed to me to stop; to slack ahead. I reversed my engine again—thought there was something wrong—and pulled her open. We went ahead a car length before I got her stopped. I looked back on the rail and saw the hind truck wheel run on a man. A man can not stand up in an engine of that particular kind and handle her and see a man on the track say twenty feet from the hind end of the tank, because it is too high. The regular switch engine tank is sloping. This was the regular switch engine of the Texas & Pacific. It would not be considered a switch engine built from the locomotive works. It is built for road purposes; not built for switching in the yard. It would not be considered safe as a switch engine. There was a good deal of traffic at the time in that yard, requiring constant switching. If it had been a sloping tank, such as they build regularly for switching purposes, I could have seen the man in time to have stopped the engine. As it was I did not see him, and could not have seen him had I been looking that way. I could not have stopped in two, three, or four feet."

The servant of the railway company who was stationed in front of the engine to look out and give signals to the engineer testified that when he saw the imminent danger of the deceased he gave to the engineer a signal to stop just before it struck the man, and then he jumped off and gave him another signal, and told him to stop, which he obeyed; but by that time the engine had run over the man.

A witness for plaintiff was permitted to testify, over the objection of defendant, that he saw another man who was working by the side of the deceased, " when he made a jump, and the engine struck his left foot—caught his foot—turned him around."

Another of the plaintiffs' witnesses was asked the question, "Do they not use on defendant's road a regular switch engine in Marshall?" Defendant's counsel objected, but the court permitted the witness to answer the question, and he replied, " They are used in Marshall; yes; when I was there they used a switch engine with sloping tank, same as the Santa Fe."

It is insisted that the evidence should have been excluded in both instances. We do not think so. Under the peculiar circumstances of this case we think that evidence that another man, at the same place and in the same peril that the deceased was, came so near being run over, is a circumstance tending to show that the peril of the deceased was not brought about by his own negligence. The fact that two men remained on the track without being aware of the approaching danger, tends more strongly to indicate that from some cause they must have had a sense of security than would the fact that one alone so remained.

The testimony clearly shows that an engine with a sloping tank was

greatly safer to use for switching than one with a square tank. Evidence that defendant used the sloping one in its yard at Marshall or elsewhere indicated that defendant had knowledge of that fact, and tended to show that it could have no good and proper reason for not using everywhere in that business the safer appliances. We do not see that the evidence on either point was very important or likely to influence the result of the trial.

The court, in charging the jury, informed them that plaintiffs sought a recovery on account of the negligence of defendant in the use of an engine for switching purposes which was unfit for such purposes. It is contended that it erred by omitting from the charge in that connection the further allegation contained in plaintiffs' pleadings that the deceased was ignorant of such unfitness.

The judge is not required to recite to the jury any more of the pleadings than he deems necessary. In this case all of the issues made by the evidence were presented to the jury by the charge. It was not necessary to do that in the way of a recital of what the pleadings contained. It was the right of defendant's counsel to request a charge to supply an omission, in this or any other respect, if one existed that should have been supplied. In fact the court did charge at the request of defendant that "defendant is not liable unless you believe from the evidence that the deceased did not know of the defective condition of the engine, if any there was."

It is insisted that the court erred in giving the following charge:

"If you believe from the evidence the injury was caused both by the defective construction or unfitness of the engine for the purposes for which it was then used, and the negligence of the engineer and yard foreman combined with said defect in the engine, the defendant will be liable."

The objection urged to this charge is, "that it assumed as a fact that the engine was defective and unsuitable for the purposes it was used for, and was a charge upon the weight of the evidence."

We do not agree with this criticism. The charge does not assert the existence of any fact, but leaves everything for the determination of the jury.

It is also complained that the court failed in this part of its charge to present to the jury the question of the knowledge of deceased of the defects in the engine.

That question was, as we have said, presented to the jury once in the very language asked by defendant's counsel. It was unnecessary to repeat it everywhere.

We do not think it would have been proper to apply it as a qualification of the charge now under consideration. Its too frequent repetition

could only have had the effect to confuse the minds of the jury and obscure other issues.

If that defense was omitted anywhere when it ought to have been included, the error was cured when it was afterwards included in a proper charge.

It is also insisted that the court erred in refusing to charge, at defendant's request, that if there were "any patent defects in the engine or tank, and deceased knew, or might by ordinary diligence have known of same, and said defects caused or contributed to the injuries complained of, the jury should find for defendant."

Without now considering the question whether the rule in this respect charges an employe with knowledge of defects, except with regard to such appliances or instruments as he is engaged himself in using, we think it sufficient to say that the law does not, under any circumstances, exact of him the use of diligence in ascertaining such defects, but charges him with knowledge of such only as are open to his observation. Beyond that he has the right to presume, without inquiry or investigation, that his employer has discharged his duty of furnishing him with safe and proper instruments and appliances. The evidence discloses that the deceased could see that the engine had a square tank, but it fails to show that he was aware of the different degrees of danger between the use of that and one with a sloping tank, or that he understood the nature of the danger to himself from the use of the square tank. We think the charge was properly refused.

With the exception of one, the remaining assignments of error are to the effect that the verdict in a number of particulars is unsupported by the evidence. To the contrary, we think the verdict is fully supported by the evidence in all respects.

The last objection is that the verdict is excessive. The deceased was a laborer, aged about thirty-five years, and earning one dollar and twenty-five cents a day. One of his children was four years old at the time of the trial, and the other one was born a month after his death. His chief qualifications for earning money, as disclosed by the evidence, were that he was "stout, healthy, and sober."

If it was our duty to calculate from these facts the pecuniary value of his life to his wife and children at the date of his death, we would not be able to make it reach near the sum given by the verdict.

While the law does not, in this character of action, intend to give compensation for anything but pecuniary loss by estimating the money value of the life of the relative, and while it necessarily results that regard must in each instance be paid to such facts and conditions as cast light upon the subject, it yet must be admitted that the inquiry is not intended to be narrowed down by the law to a result that can be exactly accounted for by the facts in evidence.

Every parent and husband has, for his wife and children, a pecuniary value beyond the amount of his earnings by his labor or vocation. That value may to some but not to every extent be susceptible of allegation and proof, and to the extent that it can be alleged and proved it ought to be done.

The difficulties of proof are known to the law maker. In some States an attempt has been made to remove them to some extent by placing limits to the amount that may be recovered. In establishing such rules the idea of making compensation in each instance for the pecuniary value of the lost life is necessarily abandoned. When no amount is fixed by law and no rule is prescribed for making the calculation upon facts capable of exact ascertainment, it necessarily follows, we think, that the law maker intended that, having reference as far as practicable to conditions existing at the time of the death, juries from their own knowledge, experience, and sense of justice should fix and assess the proper sum. They are expected to act uninfluenced by passion, prejudice, or partiality, and to pay due regard to the ascertained facts and conditions surrounding the subject. When it appears to the court that they have disregarded these requirements their verdict should be set aside.

On the other hand, when the court is unable to determine that these things have not been observed by the jury, and when it does not appear that the verdict is not the result of the honest endeavor of the jury to follow their own convictions in the exercise of a power not precisely defined, we think the law intends that the jury's estimate, rather than the equally undefined one of the judges, shall prevail.

In the case of the Baltimore & Ohio Railway Company v. The State, use of Kelly et al., 24 Maryland, 271, there was no proof of what the deceased was earning at the time of his death. It was proved that he was one of the hands in the boiler shop of the defendant railway company, and was at the time of his death thirty to thirty-six years of age, and was a sober, moral, industrious man, enjoying good health. The suit was for the use of his widow, mother, and a son about five years old. The jury gave them five thousand dollars.

The court says: "The prayer goes on the theory that the rate of wages paid at the time of the death was the true and exclusive standard of the damages sustained, and in the absence of proof on that point that nominal damages only could be recovered. So far as we have been able to learn, this proposition is not only unsupported by any direct authority but is too strict in its character to admit of general application."

In the case of McIntyre v. New York Central Railway Company, 37 York New, 289, it is said: "The jury are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death. They are not tied down to any precise rule within the limit of the statute as to amount and species of in-

juries sustained; the matter is to be submitted to their sound judgment and sense of justice. They must be satisfied that pecuniary injuries resulted. If so satisfied they are at liberty to allow them, from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family as intrinsic probabilities of the case that they were sustained by the loss of bodily care or intellectual culture or moral training which the mother in that case had before supplied, they are at liberty to allow it. The statute has set no bounds to the sources of these pecuniary injuries."

The judgment is affirmed.

*Affirmed.*

Delivered November 8, 1889.