**SOUTHWESTERN GREYHOUND LINES, Inc. v. DICKSON.**

No. 9771.

Court of Civil Appeals of Texas. Austin.

March 23, 1949.

Rehearing Denied April 13, 1949.

White, Taylor & Chandler and Kerns B. Taylor, all of Austin, for appellant.

Critz, Kuykendall, Bauknight & Stevenson, of Austin, for appellee.

RAYMOND GRAY, Justice.

Appellant prosecutes this appeal from a judgment awarding appellee $27,641.30 as damages for personal injuries sustained by her as a result of her falling over a water hose which was being used to wash the driveway at appellant's bus station, in the City of Austin, Texas.

Appellee's purpose in going to the bus station was to become a passenger on one of appellant's buses. She had traveled by taxi which stopped at one of the places where taxis usually stopped when bringing passengers to the station. After leaving the taxi, her bags were delivered to a red cap (one of appellant's employees), who preceded her, by a few feet, into the station. Between the point where appellee left the taxi and the door of the bus station there was a water hose, one end of which was attached to a hydrant on appellant's premises and the other end was in the hands of an employee engaged in washing the driveway. Also, the hose was near the step (made of concrete with a metal flange along its front) at the door leading into the station. As appellee was crossing this hose it came in contact with her feet, causing her to fall and strike her knee on the step.

Appellee alleged that "as she started to step across said water hose, in order that she might enter the defendant's bus station for the purpose of purchasing a ticket, the defendant's employee, without any warning to the plaintiff, and without looking to see whether or not any person was attempting to step over said water hose, and in utter disregard of the rights of people who might be walking along said sidewalk, violently jerked said water hose just as plaintiff was attempting to cross over same; that the water hose, as a result of the sudden pull by said employee, hit plaintiff's legs, jerking them out from under her and causing her to fall on her knees on the concrete sidewalk." And in her first trial amendment she alleged that, "the defendant, its agents and employees, were negligent in placing said water hose, and in permitting same to remain across the driveway at the time and place plaintiff received her said injuries."

By special issue No. One, the court asked the jury if appellee "tripped" over the hose. Appellant objected to the submission of this issue because there was no pleading and no evidence to support it. After their retirement and during their deliberation the jury requested the court to define the word "trip" as used in said issue, and asked: "Does the word 'trip' in this instance mean 'fall over'?" Over the objection of appellant that any instruction on the word would add to the already existing confusion and because the word conveys many different meanings, the court instructed the jury that the word "tripped" is used in its usual and ordinary meaning.

On direct examination appellee said a red cap and a white man picked her up "after I had tripped." On cross examination she said she did not trip over the hose. The word "tripped" was used by appellee's counsel in their examination of their witness Dr. Love, and appellant's counsel used the word "trip" in their examination of their witness Bacon (the employee who was using the water hose).

■ That appellee fell, at the place where the hose was, is shown by the testimony of appellee, and by the testimony of two witnessees for appellant (Dodson and Bacon, both appellant's employees). It is

appellee's contention that her fall was caused by the negligent manner in which the hose was being used. Appellee said she was watching the hose; that just before she started across it was not moving, it was lying flat; that she had put her right foot over and had raised her left foot to step over when the hose was jerked and she fell flat with her arms straight out. Among the definitions of the word "trip" found in Webster's New International Dictionary, 2nd Ed., is: "To cause to lose the footing, as by suddenly checking the motion of a foot or leg; to throw off balance." We do not think the trial court committed error in submitting issue No. One, nor in giving the instruction in response to the request from the jury. Rule 286, Texas Rules Civil Procedure.

■ Following issue No. One there were not submitted conditional issues of negligence and proximate cause, based upon the jury's finding that appellee tripped over the hose. However, conditioned upon the jury answering issue No. One "Yes," they were told to answer issue No. Two, which asked if the act of defendant in leaving the hose near the sidewalk was negligence; and if this issue was answered "Yes," the jury was told to answer issue No. Three, which asked if such negligence, if any, was a proximate cause of the injuries, if any, sustained by plaintiff. These three issues were answered "Yes." These issues are not subject to the complaints urged by points one and two, and the points are overruled. (See our consideration of points 12 and 13, infra.)

■ By points three, four and five appellant assigns as error the action of the trial court in refusing its requested issues Nos. four, five and six, which asked the jury if appellee in attempting to cross the hose failed to raise her foot sufficiently high to clear it, and the corresponding conditional issues of negligence and proximate cause. By its first trial amendment appellant pleaded this issue as an act of contributory negligence on the part of appellee. Even though it is conceded the evidence shows conclusively that appellee failed to raise her foot sufficiently high to clear the hose, that does not answer the issue whether or not such failure was negligence as

that term was defined by the court, or whether or not such negligence, if any, was a proximate cause of the injuries sustained Walgreen-Texas Co v. Shivers, 137 Tex. 493, 154 S.W.2d 625.

Appellant having plead this issue then, if the evidence was sufficient to raise it, the trial court committed reversible error in refusing appellant's request. State v. Schlick, 142 Tex., 410, 179 S.W.2d 246; Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951. In addition to the testimony of appellee set out in our consideration of points one and two above, she said she did not see the hose jerked but felt it, and reasoned it struck her left leg because she fell forward, her stockings were muddy, one up front and one up back. There was mud on the sidewalk and on the driveway. The employee said he was washing the driveway with a long water hose which was on a windlass and extended from the hydrant along in front of the sidewalk (step) out into the driveway. He did not remember jerking the hose but might have moved it around, "It was already lying there so I had enough room without jerking it." No witness saw appellee fall.

■ It was appellee's conclusion that the hose was jerked. It also was the employee's conclusion that he did not jerk the hose supported by his lack of memory of having done so. Circumstantially, appellee's fall and the condition of her stockings may have resulted from other causes than the employee jerking the hose as well as from such jerking. And so, the inquiry made by requested issue No. two, applying the trial court's definition of the term "negligence," is: Did appellee, in crossing the hose do some act which a person of ordinary care and prudence would not have done under the same or similar circumstances, or did she fail to do that which a person of ordinary care and prudence would have done? This must be determined as of the time the charge was given and not after the verdict. Schuhmacher Co. v. Holcomb, supra. The failure of appellee to get safely across the hose resulted in the damages sustained by her. Whether such failure was caused by the negligence of appellant's employee or by her own negligence was a material issue in determining the liability of appellant.

We are of the opinion these issues should have been given, and because of the trial court's refusal to give them a reversal must follow.

■ We are not in accord with the view that Rule 279, T.R.C.P. forbids a reversal of this cause. The requested issues (Nos. 4, 5 and 6) are not "various phases or different shades" of submitted issues Nos. seven, eight and nine (these being the only issues that in any way submitted appellant's affirmative defense of contributory negligence), for the reason that issue No. seven inquired if appellee, in approaching the sidewalk and in stepping over the hose, failed to look and observe whether it was safe to step across. The requested issue inquires as to the manner in which she crossed. Whether she did or did not determine it was safe for her to cross the hose would not answer the inquiry whether or not she was negligent in crossing.

■ No error is reflected by appellant's points six, seven and eight, which complain of the trial court's refusal to submit its requested issues Nos. one, two and three, which were: Did appellee before stepping across the hose fail to look and observe whether or not the employee was about to move or was in the process of moving the hose. And the conditional issues of negligence and proximate cause. These issues were substantially covered and included in submitted issues Nos. seven, eight and nine, supra.

By points nine, ten and eleven appellant complains of the submission of issue No. four, which asked the jury if appellant's employee "moved the hose at the time plaintiff was attempting to step over said hose?" And, also, the related conditional issues of negligence and proximate cause. The complaint is there was no pleading, no evidence, or insufficient evidence to warrant the issues as submitted, and only specific acts of negligence were plead.

■ We think these points must be decided on the question of pleadings. Appellee's pleadings name the alleged movement of the hose by saying it was "violently jerked" and "that the water hose, as a result of the sudden pull by said employee, hit plaintiff's legs * * *." It is the rule

that the submission of an issue is not authorized unless it is raised by both the pleadings and the evidence. Ellzey v. Allen, Tex.Civ.App., 172 S.W.2d 703, Er.Dis. It is our opinion the word "move" as used had reference to the changing of the position of the water hose by appellant's employee. Appellee alleged this was done by the hose being "violently jerked" and suddenly pulled. It then appears the manner of the movement was alleged to have been material in causing appellee to fall rather than merely that the hose was moved. In view of our disposition of this appeal on other points, we recommend that upon another trial that the special issues be made to conform to the pleadings and evidence.

■ Appellant's points twelve and thirteen complain that the trial court erred in submitting issues Nos. two and three (set out above). The objection is there was no pleading or evidence to support these issues. Appellee's first trial amendment, supra, is numbered "VIII-A;" paragraph VIII of appellee's first amended original petition alleges, "as a direct and proximate result of the acts of negligence of the defendant and its servant and employees, she has suffered damages and injuries * * *." We are of the opinion these points cannot be sustained because the trial amendment brought this alleged act of negligence within plaintiff's pleadings. Miller v. Keyes, Tex.Civ.App., 206 S.W.2d 120, defining the purpose of a trial amendment.

■ Appellant complains of the admission in evidence of appellee's physical condition, diseases and impairments. We gather from appellant's brief that this evidence pertained to a cyst on appellee's arm, knots on her arm requiring X-ray treatments, and arthritis, her anemic condition, poor assimilation of food, and her general nervous system. Under the record now before us, appellee's testimony followed by that of Dr. Love was sufficient to admit these conditions to the consideration of the jury, except, perhaps, the evidence relating to the cyst on appellee's arm, which Dr. Love said was a disease and was not caused by the fall. However, appellee filed a remittitur for medical expenses and operations not proved, and this was deducted from the amount allowed appellee by the

jury for medical expenses, etc. We, therefore, think it is not necessary to further consider the point here.

■ Appellant's fifteenth point complains that the trial court erred in refusing to hold as a matter of law that appellee was guilty of contributory negligence in failing to look either at the hose while attempting to cross it, or in looking at the employee using the hose. We overrule the point. See statement of appellee's testimony under point one, supra. No witness testified to seeing appellee fall, and her testimony contradicts appellant's complaint.

■ Appellant assigns as error the action of the trial court's rulings on evidence relative to a writing which purports to be a report made by Dr. Herbert Hipps. This evidence was offered and excluded while appellee was being cross examined by appellant. (It does not appear from the record the reason this report was made, or actually to whom it was made.)

The record reflects numerous objections were made; however, when appellant was making the bills of exception in the absence of the jury appellee was asked questions as to what Dr. Hipps said in the report; upon inquiry she stated he did not say that to her, "that is in the report." Counsel for appellee then objected to the propounded questions and as grounds for such objection said: "We are not objecting to what he said to her, and the instructions he gave her. We are not objecting to her testifying whether she carried them out or not; but we are objecting to him testifying by hearsay, not under oath or by deposition, as to what his prognosis is."

The court then replied: "That is the basis of my sustaining the objection."

We think no error is reflected by these assignments.

■ Prior to the making of the bill, the report had been offered in evidence by appellant and, upon objection, was withdrawn, the objection as sustained then went to questions propounded to appellee relative to statements contained in the report. Generally the statements of the attending physician made to the patient and the patient's reply which enables the physician to diag-

nose the case are admissible in evidence. Texas Employers' Ins. Ass'n v. Knouff, Tex.Civ.App., 297 S.W. 799; reversed on other grounds, Tex.Com.App., 7 S.W.2d 68. (The physician not then examining the party in order to testify as a witness.) The report itself was hearsay, for which reason it was not admissible. Texas Power & Light Co. v. Burger, Tex.Civ.App., 166 S. W. 680, Error Ref.

■■■■ . Appellant complains of the refusal of the trial court to allow additional time to appellant's doctor in which to complete an examination of appellee. In view of our disposition of this case on other points, we think no useful purpose would be served by our discussion of the proceedings, had before the jury and in their absence; such proceedings could hardly recur upon another trial. The record simply shows appellee first agreed to the examination but later declined to submit to the taking of X-ray pictures deemed necessary by the doctor to enable him to complete his examination of her. All of this was made known to the jury. Appellee had the right to refuse or submit to the examination. Austin & N. W. R. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L.R.A. 494, 104 Am.St. Rep. 363, 1 Ann.Cas. 261. Appellee having refused to complete the examination it would have been useless for the court to have extended the time allowed by him therefor, no abuse of discretion is shown. Kirkpatrick v. Neal, Tex.Civ.App., 153 S. W.2d 519, Er.Ref.W.M.

Appellant assigns as error the action of the trial court in refusing a new trial because of improper argument made to the jury by counsel for appellee.

One bill of exception shows that in the course of his argument one of appellee's attorneys said:

"It is a dreary outlook that this plaintiff faces. She doesn't have a bright future in regards to pains and suffering. I would not be surprised in a few years if walking down the streets of Waco you may see some woman hobbling along that may remind you of this trial down here, and it could be the plaintiff in this case.

"They didn't do it purposely; but this great octopus, operating in seven states and a little bit in two others—in seven states in the Southwest—."

Objection was made to the statement referring to appellant as a great octopus; the objection was sustained and the jury instructed not to consider the statement for any purpose. Counsel, in the presence and hearing of the jury, immediately replied: "What I mean is that they are operating out and around in that way, and I thought an octopus would be the easiest way I could describe it. In their operations that is what they are. I would not call them an octopus otherwise."

As qualified the bill of exception shows that O. Massey testified on direct examination that he was manager of the claims and personnel departments for all Southwestern Greyhound Lines. On cross examination he said Southwestern Greyhound Lines operates "rather extensively in seven states and partially in two others." Counsel was authorized to draw deductions from the evidence relative to the accident and the injuries alleged to have resulted to appellee therefrom. The suit, however, involves only the liability of appellant for negligence alleged to have occurred at its bus station in Austin, Texas.

■■■■ Accepting the explanation of counsel as to why he called appellant a "great octopus" would not make the statement any less harmful, because the extent of appellant's operations is wholly immaterial as to the issues in this case, as, also, is the possibility that the jurors "in a few years if walking down the streets of Waco * * * may see some woman hobbling along that may remind you of this trial down here, and it could be the plaintiff in this case." Neither would furnish any reason why appellant should pay damages or furnish any guide by which the amount of damages to be paid could be determined. Walgreen-Texas Co. v. Shivers, supra. Comparing appellant to a great octopus was a method of emphasizing before the jury the helpless condition of appellee as compared with the extent of appellant's operations. Humphreys v. Roberson, 125 Tex. 558, 83 S.W. 2d 311. Even though there is evidence in the record that appellee's injuries are permanent, this comparison was improper. Hewitt v. Buchanan, Tex.Civ.App., 4 S.W.

598

2d 169; Washington Nat. Ins. Co. v. Chavez, Tex.Civ.App., 106 S.W.2d 751, E.Dis.

██ Even if we should agree that the instruction from the court withdrawing the statement calling appellant a great octopus from the jury cured the error, such error was magnified by the immediate reply of counsel, which in effect told the jury that the reason he called appellant an octopus was because it in fact is one. An octopus may be generally defined as an animal of the sea having eight arms attached to its sack like body, and with these arms it entwines its prey. Because of its sinister appearance it is sometimes called a devil fish. It was not necessary for appellant to make further objection. Rule 269, T.R.C. P.; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; Traders & General Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650, Er.Dis. And for the further reason that appellee's counsel was the offender: Smerke v. Office Equipment Co., supra [138 Tex. 236, 158 S.W.2d 304]. This case quotes the rule adopted by our Supreme Court for determining whether or not the argument constitutes reversible error. As there stated the rule is:

██ "It is not the policy of the law to impose the burden of showing harmless error upon the person whose rights have been transgressed. That burden rests upon the person in whose favor the transgression was made. The rule has been announced, and is adhered to by this court, that, when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment, as a matter of law, if, under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." Authorities cited.

That the argument was improper we have no doubt, and, under the rule, a reversal must follow if "* * * there is any reasonable doubt of its harmful effect". The circumstances of the case and especially the excessive award of damages made by the jury produce a reasonable doubt of, if in fact it does not establish, its harmful effect. We are mindful of the rule that the question of whether or not arguments are prejudicial is addressed to the discretion of the trial court, but there is no conflict with

this rule and what we have already said, for the reason that the burden is on the offender to show the error of the argument is harmless. Smerke v. Office Equipment Co., supra; 41 Tex.Jur., pp. 814–819, Secs. 85 and 86.

Without setting out and discussing the further arguments complained of, we are of the opinion that the argument complained of in assignment twenty-three was a violation of Rule 269, T.R.C.P.

For the reasons stated we hold reversible error is presented by appellant's point twenty-two.

We have reached the conclusion that because of the errors presented by appellant's points three, four, five and twenty-two, supra, this cause must be reversed and remanded. It is therefore not necessary for us to consider appellant's complaint that the judgment is excessive.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.