**JOHN F. BUCKNER & SONS et al., Appellants,**

v.

**Mrs. Ruth ALLEN, Appellee.**

No. 10344.

Court of Civil Appeals of Texas.

Austin.

Feb. 22, 1956.

Rehearing Denied March 28, 1956.

Sutton, Steib & Barr, San Angelo, for appellants.

Snodgrass & Smith, San Angelo, for appellee.

GRAY, Justice.

Appellee, Mrs. Ruth Allen, recovered a judgment against appellants, John F. Buckner & Sons, for damages for personal injuries and for property damage sustained by her as the result of an automobile and truck collision. The collision occurred on a section of highway under construction in Tom Green County. Appellants were the contractors with the State and Hunter Strain and L & S Contractors were subcontractors. At the close of the evidence appellee took a nonsuit against the subcontractors.

On a former appeal this Court affirmed an order overruling appellants' plea of privilege. 272 S.W.2d 929, er. dism.

During the afternoon of September 2, 1953, appellee was returning from San Angelo to her home in Sterling City and was riding in her own car which was driven by Mrs. Jess Martin. A portion of the highway between the two towns and between San Angelo and Carlsbad in Tom Green County was under construction. After leaving San Angelo appellee and her driver proceeded along the highway until they reached a detour. The parties traveled this detour until they reached a barricade across the detour and then turned left up a prepared incline on to the main construction. The surface of this construction was slick by reason of a recent application of hot oil followed by rain. As the car reached the surface it skidded and continued to slide or spin until it collided with a truck approaching from the opposite direction. Appellee was injured and was removed by ambulance to a hospital in Ster-

ling City where she remained 65 days. Also her automobile was severely damaged.

The judgment against appellants was rendered on a jury's verdict.

We will here disregard conflicts in the evidence and consider that which supports the jury's answers.

Both Mrs. Martin and appellee were experienced drivers and as they traveled along the detour the car was well under control. The day before they had traveled this road coming to San Angelo and the barricade was not there. As they reached the barricade the speed of the car was slowed and was driven up the incline at about 10 or 12 miles per hour. As they got on the surface of the construction the car skidded and went into a spin and, although she tried, Mrs. Martin was unable to control the car but it continued to skid or spin until it collided with the truck. Oil had been applied to the surface of the construction by Hunter Strain on the afternoon the accident occurred, it had rained on it and at the time it was raining. As appellee and her driver approached the barricade they saw the truck and could see the surface of the construction but could not determine that oil was on it. There was no warning at the barricade warning that the road was slick or that oil had been applied and at the time the parties did not see a flagman at the barricade or elsewhere. There is evidence that one was sitting in a pickup truck beyond the barricade but Mrs. Martin or appellee did not see him.

Appellee remained in the hospital from September 2, 1953 to November 5, 1953. She was confined to bed all of that time except the last 3 or 4 days when she was up and on crutches. She walked with crutches until March, 1954, and used them some until April. From examinations and x-rays it was determined that she sustained three fractures of her pelvis, possibly some broken ribs and other injuries which she described as follows:

"I was knocked out, and I just don't remember much about it until the pain

began to come, and it was all in my side, and they had to strap me up and strap my hips, and they bound my foot and my head, had a knot larger than a hen egg, whole face was black, limbs black clear to my foot; this arm had a knot on it; my lower lip was torn loose here; my face was blackened."

During her stay in the hospital appellee suffered intense pain, had a special nurse, was attended by doctors, was given treatments and medicines and had x-rays. Because of appellee's long confinement to bed her bladder became irritated and she was treated for this and kidney infection.

At the time of the trial appellee's fractures had not entirely healed and she will incur future medical expense. Also her kidney trouble had not completely cleared and after her release from the hospital she was hospitalized for treatment of her bladder and kidney due to the accident.

Prior to the accident the market value of appellee's automobile was $1700 and afterwards it was $300. It sold for $50.

All hospital, doctors', nurses', x-ray and medical charges were necessary and reasonable.

At the time of the accident appellee was 76 years of age and though she had some disabilities she looked after and managed her two ranches, drove her car, did her own housework and was generally active. Since leaving the hospital she is not able to drive her car, can do very little of her housework, has a maid that lives with her and has to leave the management of her ranches to others. Prior to the accident appellee had suffered an injury to her back when she fell from a pickup truck, had kidney trouble and had diabetes.

Prior to the trial appellee submitted herself to examination by a doctor representing defendants. However this doctor did not testify and the result of his examination was not before the jury.

Appellee alleged that the collision occurred on a section of highway under construction; that appellants were the general contractors under a contract with the State, which provided:

"* * * that the safety of the public is of prime importance and the direct responsibility of the Contractor; that the Contractor shall maintain the surfacing of highway under construction and open to the traveling public in such condition that the public can travel over the same in safety; that Contractor furnish and maintain barricades, danger, warning signs and other incidentals necessary for the safety of the traffic; that the Contractor maintain the roadway in good passable condition; that the Contractor provide and maintain flagmen at the points required to provide for the safety of public travel."

Appellee further alleged that:

"a. Each Defendant failed to maintain the surfacing of the road where Plaintiff's car was wrecked in such condition that the public could travel over the same in safety.

"b. Each Defendant failed to maintain the roadway where Plaintiff's car was wrecked in good and passable condition.

"c. Each Defendant failed to bar the slick area of the highway and provide a detour around the same for travelers.

"d. Each Defendant failed to place visible warning signs at or near the slick area to warn of its existence.

"e. Each Defendant failed to warn the Plaintiff or the driver of her car that the highway was in a slick condition.

"f. Each Defendant failed to keep a plainly visible flagman at or near the slick area to warn Plaintiff's driver of its existence."

She alleged that each of the above acts or omissions was negligence and a proximate cause of her injuries and damage.

The jury found that appellants were negligent; that such negligence was a proximate cause of the collision; that appellee and her driver were not negligent and that the accident was not the result of an unavoidable accident.

We will not set out appellants' 51 points but will consider and dispose of each.

The jury assessed appellee's damages in the following amounts:

| | |
|---|---|
| Damage to automobile | $ 1,400.00 |
| Necessary ambulance expenses | 17.00 |
| Necessary nurse expenses | 521.25 |
| Necessary hospital expenses incurred | 1,434.65 |
| Necessary expenses for physicians | 887.00 |
| Probable future medical and hospital expenses | 300.00 |
| Damages resulting from physical injuries | 17,083.00 |

There appears in the transcript before us "First Draft" of the court's charge which contained issue 68. This issue in effect inquired what amount of money would compensate appellee for the injuries sustained by her. Accompanying the issue there was an instruction advising the jury what items to consider in arriving at said amount of money. Earning capacity was not used. Appellants objected to the instruction:

"Said issue improperly fails to make any provision for and does not instruct the Jury to exclude from consideration any impairment of earning capacity from any prior injury or disability as applied to the facts of this case, and as to the facts of disability, if any, resulting from the collision in question."

The charge appears to have been amended and the instruction accompanying issue 68 as given to the jury contained the following:

"* * * in estimating such damages and expenses, if any, you must exclude from your estimate any compensation for physical impairment or any impairment of earning capacity, if any, suffering, if any, of the plaintiff, or ambulance services, if any, medical, surgical, hospital or nurses services, if any, which may be due solely or partly to ailments or physical conditions, if any, which she may have had before the accident in question; but if you find from the evidence that the injuries, if any, have aggravated any ailments or physical conditions, if any, which plaintiff may have had prior to the time of the alleged injuries, then you may consider in your estimate such aggravation, if any, * * *."

The instruction given also told the jury "You may consider only the present value to the plaintiff of such physical capacity or ability as she may have lost as a result of her injuries."

Appellants here complain of the instruction because: (1) the jury was not required to exclude loss of physical ability to earn, but were permitted to compensate appellee for future pain, discomfort, suffering and future loss of physical capacity and earning ability.

There is evidence that appellee will in the future suffer pain and discomfort and that her future physical capacity or ability was impaired. She was entitled to receive compensation for this impairment. Texas & P. Ry. Co. v. Perkins, Tex.Civ.App., 284 S.W. 683, er. dism. Further the evidence shows that the injuries were of a permanent and disabling nature and the jury was authorized to assess damages for such loss of capacity and earning ability. McIver v. Gloria, Tex.Civ.App., 163 S.W.2d 890, affirmed 140 Tex. 566, 169 S.W.2d 710; 13 Tex.Jur. p. 348, Sec. 196, and Sec. 224, p. 386.

Appellants further complain of the instruction because it

"* * * fails to direct the jury to exclude from their award any amounts of money which, had Plaintiff not been injured, would have had to be paid by

Plaintiff in the form of income taxes upon the realization of an equivalent sum of money as taxable income, thus giving plaintiff a windfall."

In Missouri-Kansas-Texas Railroad Company v. McFerrin, 279 S.W.2d 410, this Court held that there was no necessity to inform the jury as to the income tax law in order for them to properly assess damages for personal injuries. A further discussion of this subject, which cites and is in accord with our decision supra, is found in 16 NACCA Law Journal, pp. 212–217 and p. 230, citing Hall v. Chicago & North Western Railway Co., 5 Ill.2d 135, 125 N.E.2d 77. We hold that because the jury was called upon to compensate appellee for her injuries and was not concerned with how she might spend, or be obligated to spend, such compensation the refusal of the instruction was proper.

We have considered the entire record and have concluded that the jury's findings as to the amount of appellee's damage (except as to medical expense later noticed) are supported by the evidence, are not excessive and that a remittitur is not required. It was the province of the jury under the court's instructions and the evidence to fairly compensate appellee for her injuries and the resulting expenses. In the absence of some showing that the jury did not honestly, fairly and impartially weigh the evidence and reach their verdict under the instructions and the evidence or that the jury was influenced by prejudice, passion or some other improper motive we cannot say that the judgment rendered on the verdict is excessive. Missouri Pac. Ry. Co. v. Lehmberg, 75 Tex. 61, 12 S.W. 838.

Dr. Swann testified that he composed the staff of the Sterling County Hospital, was familiar with the charges made at the hospital, the services performed for such charges and that the charges as shown on the bill exhibited to him were the usual, reasonable and necessary charges incurred by appellee from September 2, 1953, to November 5, 1953. Dr. Swann said that appellee was first placed in the hospital by him as an emergency case; that she was under his supervision and control while there and that the charges on the bill supra were incurred upon his orders. He further said that appellee had trouble with her kidneys and bladder prior to the accident and that being continuously confined in her bed caused appellee's bladder to become irritated and that he called in Dr. Mee.

Mr. Stuckwish testified that he was administrator of the Sterling County Hospital; that the records were kept under his directions, supervision and control; that the original entries of charges were placed on the bedside chart by the nurse, were then put on the daily work sheet and then transferred to the ledger, and that the ledger showed the total of appellee's hospital charges to be $1,402.25. He further said the charges were reasonable.

Dr. Mee testified that he limited his practice to the kidneys and bladder; that he saw appellee in the Sterling County Hospital October 2, 1953; that the occasion was because of a "flare up" of her right kidney; that he treated her then and that he saw her again on the 14th and the 28th. He said that appellee was in bed which made it more difficult to clear up a kidney infection. He was asked: "Would it aggravate a kidney infection?" Objection was made that the question was leading and the objection was overruled. Dr. Mee said he looked at the bedside chart, went over the whole case with Dr. Swann including appellee's injuries to determine the possibility of kidney injuries and also asked appellee what happened. He was then asked:

"As a result of that did you find out for yourself whether or not there had been any trauma or injury to any area of the body that might have some effect on the kidney or bladder or any part of the urinary tract?"

Objections were made that the question called for an answer based on hearsay and not personal knowledge. The objection was overruled. Later Dr. Mee expressed his opinion without objection that the flare up was caused from trauma.

Dr. Swann and Dr. Mee were not examining appellee for the purpose of testifying as witnesses but for the purpose of treating her as a patient. Dr. Mee did not testify as to what the bedside chart showed nor what Dr. Swann and appellee told him. Dr. Mee was simply getting the history of appellee's complaint of kidney ailment for the purpose of enabling him to diagnose the complaint and to form an opinion for treatment and not to give independent evidence. Southwestern Greyhound Lines v. Dickson, Tex.Civ.App., 219 S.W.2d 592. Also appellee's injuries and her kidney and bladder ailments had been testified to without objection and error is not presented by subsequent objections. Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170.

Both Dr. Swann and Dr. Mee gave testimony without objection to the effect that because appellee was confined to her bed her kidney and bladder condition was aggravated; that because of improper drainage her bladder became irritated and the leading questions complained of related to appellee's condition as already testified to. Error is not reflected by the objections. 44 Tex.Jur. p. 1109, Sec. 129.

Dr. Swann having treated and observed appellee as he did was in position to express his opinion as to the extent of her recovery and her future incapacity. Also he could testify as to his opinion that from looking at x-rays appellee appeared to have broken ribs. An objection to this testimony went to its weight rather than to its admissibility.

There was medical testimony that appellee's prior disabilities were aggravated by her injuries received in the accident and the charges made (except as later noticed) were not subject to the objection that they in part were for bodily conditions existing prior to the accident. (The instructions to the jury limited their consideration to such aggravation of prior disabilities.) Also Dr. Swann showed himself to be familiar with the various charges made and said they were reasonable. There was no error in permitting him to testify to such charges.

We find no error presented by appellant's points 6 to 16 and their combined effect did not prevent appellants from receiving a fair trial.

Dr. Mee testified that after appellee was discharged from the hospital November 5, 1953, he treated her for kidney flare ups which in his opinion were due to the accident. Due to this condition appellee was hospitalized at Sterling City Hospital three times in 1954. The total charges for this hospitalization was shown to be $161.40 which added to the bill for $1,402.25 testified to by Mr. Stuckwish makes a total of $1,563.65, from which should be deducted $130—charges for insulin given appellee each day for 65 days at $2 per day for her diabetes which she had prior to the accident. The jury found the amount of charges for hospital charges incurred by appellee due to her injuries was $1,434.65. This verdict is supported by the evidence except that it is excessive in the amount of $1. Under the rule of de minimis non curat lex this error is disregarded and it has no effect on costs.

It is not disputed that hot oil had been applied to the surface of the highway on the afternoon the accident occurred; that it had rained and that the highway was slick or very slick. Appellee and Mrs. Martin were traveling along a detour (it is not disputed that this detour was the way that traffic was directed to travel) and when they came to the barricade a left turn up the incline and on to the slick surface was the only way open for them to proceed. Thus under the penalty provided in Art. 6674u, Vernon's Ann.Civ.St., they had no choice to proceed except as they did. There was no warning at this turn that the highway ahead was slick and there was no flagman visible to appellee or Mrs. Martin.

In their answer appellants alleged:

"* * * that at the time of the accident made the basis of this suit, this defendant has no control over the situs of said accident; and was not required

or charged with the duty of maintaining said premises and that if any actual duty was owed to plaintiff, it was on the part of the other defendants who were solely in charge of said premises at the time the alleged accident occurred."

The evidence does not show that appellants were not in control of the detour and the barricade. The construction contract introduced in evidence named appellants as the contractors; provided for construction of 5.338 miles of highway of which the situs of the accident was part, and in part provided:

"The safety of the public and convenience of travel shall be required as of prime importance during construction; in all other respects public safety and convenience and provision therefor made necessary by the work shall be the direct responsibility of the contractor and shall be performed at his entire expense; * * * 'no direct compensation except as specially provided in these specifications will be made to the contractor for the work and materials involved in constructing and maintaining detours and approaches, furnishing, installing and maintaining barricades; danger, warning and detour signs and their subsequent removal and all other incidentals necessary for the proper direction, safety and convenience of traffic during the contract period of this work is to be considered subsidiary to the several items for which unit prices are requested in the proposal.' * * * 'the contractor shall provide and maintain flagmen at such points and for such periods of time as may be required to provide for the safety and convenience of public travel * * *'—there shall be no responsibility upon the Engineer or his authorized assistants, either personally or otherwise, his agents or representatives."

It was proper to plead and to admit in evidence the contract to show that appellants were the authorized contractors; to show they were authorized to provide detours, were in charge of the detour where the barricade was; were authorized to place it there and authorized to place signs directing traffic. Art. 6674u, supra.

In Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508, 510, the Court quoted with approval from 38 Am. Jur. Sec. 20, p. 662, as follows:

" 'A contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract. Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care. Thus, a person who contracts to make repairs can be held liable for his negligence in doing the work. * * * The sound rule appears to be that where there is a general duty even though it arises from the relation created by, or from the terms of a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence.' "

In 38 Am.Jur. Sec. 19, p. 661, it is said:

"The duty to use care, which, as hereinbefore stated, is an indispensable element of actionable negligence, may be a duty owing to an individual by reason of his peculiar position, or it may be general and owing to everybody. A duty however, which is owing to everybody cannot serve as the basis of an action for negligence until some individual is placed in position which gives him occasion to insist upon its performance."

Under the contract appellants owed a duty to provide means by which the public could safely travel over the portion of the highway under construction. Thus the contract created the state of things which furnished occasion for appellee's injuries and in the performance of the contract appellants were bound to use due care to avoid injury to persons or property and are liable for negligent acts of commission or omission when they knew or should have known of the dangers which resulted in injury.

We think it cannot be disputed that the work done under the contract rendered the highway dangerous for travel unless the proper warnings were given. Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A.,N.S., 758.

The jury found that the highway was in a slick and dangerous condition; that appellants knew of such condition; that appellants should have known of such condition; that they failed to place warning signs at or near the slick area; that they failed to warn at least one of the occupants of the car that the highway was slick, and that they failed to bar the slick area to travel and provide a detour around it. Thus appellants by erecting the barricade directed appellee and Mrs. Martin without warning onto a slick and dangerous surface that they knew to be in that condition and for which the jury convicted them of negligence.

Appellants say that they were not authorized to erect or maintain any sign, signal or device which attempted to direct the movement of traffic and cite City of Austin v. Schmedes, Tex., 279 S.W.2d 326. There the Court considered the liability of contractors for injuries sustained and said that the contractors were prohibited by statute from erecting and maintaining the signs at the points mentioned in the jury's findings. The Court cites Art. 6701d, Sec. 36 (a), Vernon's Ann.Civ.St., and Art. 827a, Sec. 13, Vernon's Ann.Penal Code. The first statute deals with persons placing unauthorized signs, etc., and the second with unauthorized persons placing signs, etc., along State highways. The Court further

said that the prohibition contained in the statutes was not relieved by a contract with the State.

In the above case the accident there considered occurred December 9, 1952. Tex.Civ.App., 270 S.W.2d 442, 444. In 1953, the 53rd Legislature enacted Art. 6674u, supra. Acts 1953, 53rd Leg. p. 706. This Act made it unlawful for any person to disobey signals, warning signs and barricades placed on any highway under construction or being repaired. The Act defines "Barricade" and "Warning Sign." The definitions include those erected or placed on any highway under construction or being repaired by " * * * any contractor or sub-contractor doing road, street or highway construction or repair work." Thus the Act makes barricades and warning signs erected by a contractor "authorized" and makes such contractors "authorized persons" to erect and maintain the same. This Act was in effect at the time the accident in question here occurred and is controlling on the question of the authority of appellants to erect barricades and place warning signs and signals.

A witness who testified that he was familiar with highway construction said that it was customary, when hot oil is applied to construction and traffic is allowed on it, to erect a sign similar to a sign exhibited to him and admitted in evidence. This sign read "Slick, Fresh Oil." This was not an unlawful or an unauthorized sign. Art. 6674u supra.

In his charge to the jury the trial court gave a proper definition of negligence and other terms used in the issues and the accompanying instructions. The several acts of negligence alleged by appellee were submitted with accompanying issues of negligence and proximate cause. Appellee was not bound to rely on any single act of negligence alleged by her but was entitled to a finding on all that were raised by the evidence.

Appellants objected to the first draft of issue 1 because, among other reasons, it did not limit the jury to a consideration "of

slickness and dangerousness" caused by oil and rain. The issue was rewritten and as submitted limited the jury's consideration to meet the objection.

We think the issues submitted were controlling issues and did not constitute a comment on the weight of the evidence.

At the beginning of the trial one of the attorneys for defendant Hunter Strain elected to make a statement to the jury in lieu of reading his pleadings. Appellee's attorney objected to the statement and insisted that the pleadings be read. Various remarks followed and defendants' attorney objected to the statements made by the attorney for appellee and requested that the statements be withdrawn from the jury. The request was granted and the jury was instructed accordingly. We think the instruction cured any harmful effect of the statements and that appellants' motion for a mistrial was properly overruled.

Both attorneys for appellee examined, at separate times, witnesses for appellee. This was a matter addressed to the sound discretion of the trial court and appellants' objections here present no error.

During the examination of Dr. Swann relative to the hospital bill by appellee's attorney one attorney for defendants interrupted and stated he wanted to ask questions for the purpose of making an objection. The request was denied but the court advised the attorney he could make his bill of exceptions. There is no showing that a making of a bill was prevented and the attorney was not denied the right of cross examination of the witness as is here contended. Further along in the examination of Dr. Swann the total amount of the hospital bill was read to the witness by appellee's attorney. Objection was made with a request that the jury be instructed not to consider what was read. The jury was so instructed. Error is not presented.

Appellants complain that the trial court did not promptly rule on their objections when made. They do not show or suggest that the objections were not being

pondered before the ruling nor that they were harmed. Therefore error is not presented.

In the presence of the jury appellee's attorney asked attorneys for the defendants if they would agree to have the defendants Lassiter, Strain and Buckner present the following day in order that they would be available for examination by appellee, and asked whether it would be necessary to have subpoenas issued. Various side bar remarks followed and a request was made that the jury be instructed not to consider the remarks. This instruction was given and we think removed any harmful effect thereof.

Appellee's attorney asked Dr. French while he was testifying if he knew how many ranches Hunter Strain owned and how many road building trucks and crews he operated. Objection was made, it was overruled and the witness answered that he did not know. No harm to appellants is shown.

While appellee's attorney was reading to the jury the portion of the construction contract relative to personal liability of public officials (quoted supra) appellants objected to that portion of the contract being admitted in evidence. The trial court asked appellee's attorney what the purpose was and he replied that he had a right to show why the State and the engineer were not involved. Objections were made and sustained and the jury was instructed not to consider the remarks of the attorney. In view of this instruction we think harm did not result to appellants.

Appellants say they were entitled to a continuance or a mistrial upon appellee taking a nonsuit against Hunter Strain and L & S because of such nonsuit the judgment Contractors, or in any event that should be reduced by one half because they were deprived of their right of contribution. Appellants did not file any counterclaim or in any manner ask for affirmative relief against these defendants which if they had done they would have avoided the difficulty of which they now complain.

Rule 164, Texas Rules of Civil Procedure, provides for the taking of a nonsuit at any time before the jury retires.

■ Art. 6674*l* provides that contracts for highway improvements shall be signed by the State Highway Engineer, approved by at least two members of the Commission and signed by the contracting party. The contract here was signed by D. C. Greer who, there was evidence to show, was the State Highway Engineer. Above his signature there is a notation as follows:

"Certified as being executed for the purpose and effect of activating and/or carrying out the orders, established policies, or work programs heretofore approved and authorized by the State Highway Commission."

and below the signature a further notation:

"Executed as State Highway Engineer and approved for State Highway Commission under authority of Commission Minute 30665."

The contract is signed by appellants and we think it is not subject to their objection that it is not properly authenticated.

■ At most the evidence supra presented issues of fact as to the negligence of appellee and her driver. It does not as a matter of law convict them of contributory negligence.

■ The witness Lucas testified that the first he knew of an accident was when a man waived him down and told him to be careful the road is slick. Upon being asked where the man was he said that he was in the corner of the detour just before he came upon the new road bed. Objection was made to this testimony and a request to strike it was made. Both were overruled. Appellee was entitled to inquire where this man was, whether at the scene of the accident or elsewhere. However be this as it may the flagman himself testified for appellants and said that after the accident Mr. Lassiter (who testified he was superintendent for appellants) put him over on the detour to stop "cars dead still"

and that he stopped every car he could. The first evidence supra was not evidence of precautions taken after the accident and appellants are not in position to complain of the latter.

■ The witness Lucas further testified over objection that when he drove upon the construction it was slick and that his car would "slip around" and further said that because the road was slick the ambulance had to be pushed before it could start off. This was evidence of the condition of the surface over which appellee's car traveled and at the site of the accident a short time after it occurred and was not evidence so remote that it showed a condition existing at a time other than that under inquiry.

■ Hunter Strain testified that he had some arrangement with appellants to do some of the highway work; that at the time of the agreement the warning signs and flagman were already "in effect" on the project; that he saw no reason for discussing it and said:

"* * * if they had finished the base and had opened it up to traffic and I had been taking care of traffic I would have had flagmen and watchmen there."

The agreement between Strain and appellants was in the form of a letter and made no mention of warning signs or flagmen. This evidence did not contradict the writing but tended to show that Strain was not obligated, as between him and appellants, to maintain warning signs and a flagman at the barricade.

■ Mrs. Martin was asked on cross examination what the car did, what she did, if she was excited, if she applied her brakes, if she accelerated the speed of the car, how the car acted and why she didn't stop the car before it collided with the truck. Appellee was permitted to testify that she did not know of anything Mrs. Martin could have done after the car started skidding to keep it from colliding with the truck. The driver's skill having been questioned and

there being testimony that appellee was an experienced driver it was not error to permit her to testify as she did.

We have concluded that reversible error is not presented by appellants' points and that their cumulative effect does not require a reversal of the judgment. Except for the reduction in amount as stated supra the trial court's judgment is affirmed.

Affirmed.

## On Motion for Rehearing

In their motion for rehearing appellants say:

"This Court of Civil Appeals erred in holding that Appellants were authorized by Art. 6674u, R.C.S., to erect the sign, which was not erected, reading, 'Slick, Fresh Oil.'"

They say that Art. 6674u "does not attempt to state what signs a contractor is 'authorized' to place upon such road." We quote from Art. 6674u:

"'Warning Sign.' Every sign, signal, marking, and device erected or placed upon any street, road or highway barricade, or erected or placed upon any street, road or highway which is under construction or being repaired in any way by the State Highway Department or any political subdivision of the State, or any contractor or sub-contractor doing road, street or highway construction or repair work, for the purpose of regulating, warning or guiding motor vehicular traffic or otherwise stating the conditions under which traffic by motor vehicle may be had upon such street, road or highway. A warning sign shall include, but shall not be limited to, a flagman placed upon any street, road or highway by the State Highway Department or any political subdivision of the State or by any contractor or sub-contractor for the purpose of directing traffic around or upon such street, road or highway as is under construction or in the process of being repaired."

Section 2 of the Article provides that:

"It shall be unlawful for any person to * * * disobey the instructions, signals, warnings, or markings of any warning sign placed upon any street, road or highway barricade or placed upon any street, road or highway under construction or being repaired under the provisions and authority of this Act, unless at the time otherwise directed by a police officer."

We see no conflict in the provisions of Art. 6674u and Sec. 36(a) of Art. 6701d, Vernon's Ann.Civ.St., and Sec. 13 of Art. 827a, P.C., but the provisions are cumulative at least to the extent of authorizing certain persons to erect signs for the purpose of directing traffic and provides that such signs when so erected are authorized because it is unlawful for any person to disobey the warning of such signs.

Ralph Lassiter one of the partners of the firm of L & S Contractors and also a superintendent for appellants testified:

"Q. You are familiar with the practices of the Highway Department and of other road builders in Texas in building and constructing highways, aren't you? A. I am familiar with it, yes, sir; I learn something every day.

"Q. I will show you a picture here of a warning device; have you seen the originals of that in use? A. Yes, sir, I have.

* * * * * *

"Q. It is a fact, isn't it, Mr. Lassiter, that such a device as is shown in that picture, or one similar to it, is customarily used when oil is applied on topping and traffic is allowed to come on it? A. On certain projects.

"Q. On certain projects? A. Yes, sir.

"Q. Would that be a project where hot oil is applied and traffic is allowed on it? A. If you don't have a detour; if the State doesn't set up a detour.

"Q. If the State doesn't set up a detour for them and if the traffic is put on the hot oil it is customary to use similar warning devices to that, isn't it? A. In some cases, yes, sir."

We adhere to our holding that the sign was not an unlawful or an unauthorized sign. Moreover the testimony of Mr. Lassiter shows that when conditions as testified to here exist it is customary to use a sign like or similar to the one exhibited to him. There was also evidence that there was no warning on the barricade.

Although we have answered appellants' objection to the effect that they were not authorized to erect the sign we think the evidence of Mr. Lassiter shows nonconformity with a general custom and that the failure to erect the sign could properly be considered as some evidence of negligence. Hubb Digs Co. v. Bell, Tex. Com.App., 1 S.W.2d 575; Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527; Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A. L.R. 1445; Solo Serve Co. v. Howell, Tex. Civ.App., 35 S.W.2d 474, er. ref.

As we noted in our original opinion the question of "earning capacity" was injected into the instruction accompanying issue 68 by appellants' objection to the instruction as contained in the first draft of the charge. Also as there noted the instruction was amended and as given it limited the jury's consideration of the impairment of earning capacity to meet the objection. This amendment was apparently approved by appellants as is evidenced by their objections and exceptions to issue 68 and its amended accompanying instruction which we quote in full:

"Defendants object and except to Special Issue No. 68 and the instruction given in connection therewith for the reason that the said instruction requires the Jury to answer Special Issues 63, 64, 65, 66 and 67 in the affirmative, or suggests to the Jury that such issues ought to be answered in the affirmative and thus that the issues lettered A, subsidiary to each of such issues, ought to be answered and is thus a comment on the weight of the evidence. The second paragraph of such explanatory instruction is further objected to for the reason that it does not require the Jury to exclude from their consideration medical, hospital, surgical, nurses or ambulance expenses due solely or partly to ailments for physical conditions, if any, which she may have had before the accident in question, and hence permits the Jury to find damages in excess of the amount permitted by law. Such second paragraph of such explanatory instruction is further objected to for the reason that it permits the Jury to compensate the plaintiff for future medical and hospital expenses due solely to pre-existing ailments or conditions. Such explanatory instruction is further objected to because it fails to direct the Jury to exclude from their award any amounts of money which, had plaintiff not been injured, would have had to be paid by plaintiff in the form of income taxes upon the realization of an equivalent sum of money as taxable income, thus giving plaintiff a windfall."

The instruction here complained of was doubtless given in response to appellants' objection to the instruction contained in the first draft of the charge, and any error resulting from the giving thereof was invited. Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280.

We have considered all matters presented in appellants' motion for rehearing but adhere to the conclusion reached in our original opinion.

The motion for rehearing is overruled.

Motion overruled.