E. C. BAUGHN ET AL. (BIG FOUR ICE AND COLD STORAGE COMPANY ET AL.) V. D. A. PLATT.

No. 6269. Decided June 19, 1934.
(72 S. W., 2d Series, 580.)

*Witt, Terrell & Witt,* and *A. L. Riley,* all of Waco, for plaintiffs in error.

Upon the proposition that the manner of tying the ice on the running board of the car was not the proximate cause of the injury, plaintiffs in error cite: City of Dallas v. Maxwell, 248 S. W., 667; Magnolia Petroleum Co. v. Cocke, 3 S. W. (2d) 139; Linn Motor Co. v. Wilson, 14 S. W. (2d) 867; 45 C. J., 921; Pure Oil Co. v. Boyle, 16 S. W. (2d) 146, 26 S. W. (2d) 161.

*Joseph W. Hale* and *George Clark,* both of Waco, for defendant in error.

The trial court should have required the jury to determine whether or not the act of the employee of the ice company in insecurely attaching the block of ice in question to the running board of plaintiff's car was the proximate cause of his injury and damage. Gulf, C. & S. F. Ry. Co. v. Ballew, 39 S. W. (2d) 180; Hines v. Morrow, 236 S. W., 183; Crystal Palace Co. v. Nelson, 300 S. W., 183.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was filed in the District Court of McLennan County, Texas, by D. A. Platt against E. C. Baughn, J. V. Cummins, Southland Ice Company, Geyser Ice Company and Big Four Ice & Cold Storage Company, to recover damages for personal injuries alleged to have resulted from the negligence of the above named parties. The case was tried to a jury in the district court. At the conclusion of the evidence Cummins and the three ice companies moved the court to either instruct a verdict in their favor, or withdraw the case, as to them, and each of them, from the jury and render a judgment in their favor. In response to such motion the trial court withdrew the case from the jury as to such defendants, and

entered judgment in their favor. After this action of the trial court Platt dismissed his suit against E. C. Baughn. Platt duly appealed to the Court of Civil Appeals at Waco, and that court reversed the judgment of the district court and remanded the cause for a new trial. 47 S. W. (2d) 870. Cummins and the three ice companies bring error.

Since the trial court withdrew the case from the jury, and himself entered the judgment above indicated the reversal and remand as entered by the Court of Civil Appeals must be affirmed if there is any evidence in the record that would have justified the trial court in submitting the case to the jury. This is the one question of law to be decided.

Viewed in its most favorable light for Platt, the evidence shows that the ice companies operated an ice wharf or platform in the City of Waco, Texas, where ice was sold at retail to the general public; that on the day Platt was injured the defendant, Baughn, drove up to this platform in his own car and asked for 100 pounds of ice; that Baughn stopped his car with its right side to the platform, and by his words and actions indicated that he wished the ice deposited on the right running board; that the servant of the ice companies deposited the 100 pound block of ice on the right running board as indicated by Baughn; that after the ice had been deposited on the running board of the car the servant of the ice companies tied it to the door of the car with common binder twine; that the servant had been instructed by his masters to tie ice on cars so it would not fall off; that this block of ice was not tied in the usual manner for tying that size block of ice at that station; that Baughn was not an employee of the ice companies and they had no control over him or his car, and had no authority to direct the way or manner in which he should drive in going to his home some four miles in the country; that after Baughn had left the city limits with the ice still on the running board of his car, and while he was traveling along the public road, the block of ice was thrown from the running board, and struck and injured Platt, who was walking along the road at the time.

The record further shows that Platt offered in evidence the deposition of E. C. Baughn. In such deposition Baughn testified with reference to the circumstances of the delivery of the ice to him as follows:

"I drove up and told this man I wanted a 100-pound block of ice. He got the ice and tied it on the south side of my car. My car was facing east. I did not direct him to tie the ice

on the car. I paid him for the ice. He tied the ice to the door knob of my car, using just common binder twine.

"There was no character of support on the fender where the ice was placed, nothing but a rubber mat on the running board. I did not get out of my car when he put the ice on it. I don't think I stopped the engine of my car and I did not give the man any directions as to how to put the ice on my car. I went home after I left the ice plant. I went out east on Elm Street, turning into the Dallas road at the end of Elm Street."

Platt was sworn as a witness in his own behalf, and testified in regard to the immediate event of his injuries, as follows:

"The paved part of the highway is about 20 feet wide and in a little oval shape; it comes up to a crown in the center and then slopes off to each side. As you get off the macadam part, where it reaches dirt there is a gravel and sand formation on each side, filled in, a sort of a shoulder comes in back that way (indicating). The width of the road, from grass to grass, is about forty feet, and then from the grass to the ditch there is a little more space, about three feet on each side.

"I was walking over on the graveled part of the road, next to the grass. I would figure that I was something like 8 feet from the macadam part of the road. I was coming toward town, facing south, which put the public road on my right. I was coming south along the east side of the road.

"I saw Mr. Baughn coming towards me. I heard him testify as to the rate of speed he was going—30 to 35 miles an hour. As he came towards me I raised my hand because the ice was jumping up and down on the running board. When he got close to me, there was some vehicles coming on the other side and he kind of swerved his car to his right and the ice slung off his car; this swerving the car caused the ice to fall off. I don't know how it got off the car; it just slung off. I did not make any examination of the string; I didn't take any time; I was hurt and paid no attention to it. I do know the ice hit the ground and bounced back, kind of zig-zagged and you couldn't tell where it was going. If I could have told which way it would go I could probably have jumped out of the way of it.

"The macadamized part of the highway there is somewhat wavy and that has a tendency to make the car bump and bounce a little. I could see Mr. Baughn coming up the road, driving his car at a pretty fair gait; I am not positive, but I would judge he was going thirty or thirty-five miles an hour. (Witness demonstrates to jury the manner in which Mr. Baughn swerved to the right to avoid approaching traffic.)

He was going this way and the car was standing over there on this side of the road, and meeting the traffic he had to swerve to the right to miss the traffic. When he swerved to the right the right hand side of his car was a little lower than the left side on account of the ground being a little lower there, and just as he swerved to the right the ice shot off. I would judge Mr. Baughn went thirty or forty feet up the road from the time he made that swerve until he stopped. He stopped his car, got out and walked back to where I was. I believe somebody else picked me up from the ground before he got to me but I do not know who it was and did not inquire who it was."

Baughn also testified in regard to the above event as follows:

"I was going something like 30 or 35 miles an hour with that 100 pound block of ice on the running board. I saw Mr. Platt just a short ways up the road before this accident occurred—about as far from me as from here to the corner there (indicating), across this room. He was walking by the side of the road on the gravel. I don't know how far he was from the macadamized part of the road; he was at the edge of the gravel. I saw Mr. Platt about the same time that I saw this Ford car that I testified about in my deposition, but that was not— I did not reduce the speed of my car when I saw this Ford; I was driving slow because the road was rough; I knew the road was rough there.

"The road there is higher in the middle and slopes down to the side. When I was driving along on the smooth-surfaced part of the road my car was practically level and when I turned down on the edge here (indicating), that put the left side of my car up and the right hand side a little lower—the left hand side, I would say, was just a few inches higher than the right side; I don't think it would be as much as six inches higher on one side than the other. 'Q. You were going from thirty to thirty-five miles an hour and hit the loose and rough edges of the concrete? A. Yes, sir. The result was that your car bounced along there, hop-hop-hop—like that (indicating), and off went the ice. You testified the ice went in the same direction as you did. A. Yes sir.' The ice went practically 20 feet, skidded along in the same direction I was going, went about 20 feet and hit Mr. Platt. I went about as far as from here to that door (indicating door in court room entrance. Counsel steps from witness-stand to door). Yes, I would estimate that distance to be about 30 feet. I went about thirty feet beyond the point where the ice went off before I stopped.

"I jumped out of the car as soon as I stopped—but before

I got to Mr. Platt as I came towards him, he threw up his hand like this (indicating), and I thought he was waving at me, recognized me, and I threw up my hand and he began to make a motion with his hand and about that time the ice hit him, slid off and hit him and I put on the brakes and stopped as soon as I could. He threw up his hand as a warning—. 'Q. He put up his hand as if warning you? A. Yes, he threw up his hand. Q. He saw the speed you were going and the car bumping like that and put up a warning hand? A. Well, I imagine he saw the ice come untied'—I am drawing on my imagination about this. I just thought he was waving at me when he raised his hand. I passed him and throwed up my hand like that (indicating) and looked back and about the time I got even with him I began to slow up; I seen it wasn't what I thought it was; I thought it was just a gesture and I looked back and saw he was down on the ground and I stopped my car. I don't remember whether I picked him up or whether he had gotten up himself. I don't remember whether I got out on the right hand side or left hand side of my car when I stopped, but I believe I got out on the right hand side.

"The ice string had come untied; no part of the string was attached to the door knob and none to the windshield; the string did not break; it came untied according to my theory, I did not examine the string there to see, but that would be the only way it could have happened; I have argued that out with myself and come to the conclusion that that is the only way it could happen."

It also appears that the servant of the ice companies knew that the ice was to be transported several miles on a public road, and knew that it was liable to fall off if not securely tied.

Under the above record the Court of Civil Appeals holds that the trial court should have submitted issues of negligence on the part of the ice companies, and proximate cause to the jury. In this record we quote the following from the opinion of that court:

"* * * Whether or not such agent was negligent depended on whether he failed to properly tie the ice, and whether he knew or by the exercise of ordinary care should have known that the ice would be thrown from the car and the injury to plaintiff or some similar injury inflicted as the result of his conduct."

By proper assignments the ice companies contend that the act of their servant in depositing the ice on the running board of Baughn's car, including the manner of its tying was too remote from the event of Platt's injuries to be considered a

proximate cause thereof. We sustain such contention. Texas & Pac. Ry. v. Bigham, 90 Texas, 223, 38 S. W., 162; Union Stockyards v. Peeler (Com. App.), 37 S. W. (2d) 126; Houston & T. C. Ry. Co. v. Maxwell (Civ. App., writ ref.), 128 S. W., 160.

Proximate cause has often been defined by this court. We do not deem it necessary to enter into any extensive discussion of the meaning of the term in this opinion. In the Union Stockyards case, supra, the writer said:

"The ordinary layman understands the term 'proximate cause' to mean the nearest cause, but such is not the legal meaning of the term. In law an event may be the proximate cause, though it is not the nearest cause, and conversely an event may be the nearest cause in point of time, and not in law, the proximate cause. It is sufficient in law for an event to be proximate cause of an injury, if the injury is the natural and probable result of the act of negligence, either by commission or omission. It is further a rule of law as applied to negligence that a party will not be held responsible for the consequences of an act which ought not reasonably have been foreseen. In other words, in order to warrant a finding that an injury is the proximate result of an act of negligence, either by commission or omission, it must appear that the injury was the natural and probable consequence of the negligent act complained of, and that the party committing the negligent act ought to have foreseen such consequences in the light of attending circumstances. All the above rules are laid down and exhaustively discussed by Chief Justice Gaines in the Bigham case, supra."

When we come to apply the rule above announced to the facts of this case we are convinced that the event of the depositing of the ice on the running board of Baughn's car, including the manner of its tying, by the servant of the ice company, was too far removed, that is too remote, from the event of Platt's injuries to permit it to be said that the former was the proximate cause of the latter. In other words we think it cannot be said that the servant of the ice companies ought to have anticipated or foreseen that his acts would result in Platt's injuries. In connection with the above we call attention to the fact that at all times here involved Baughn was his own master. The ice companies had no control over him or his car. They had no authority to direct or suggest how he should drive in going to his home with the ice, or, for that matter, to direct in any way what he should do with the ice. Baughn knew the ice was resting on the flat surface of the

running board, and was only tied with a binder twine to the door of the car. Also this must have been satisfactory with him as he gave no directions in regard to·the matter and offered no objection to what was done. Baughn, as his own master, and in full and exclusive control of his own car, on which he was transporting his own ice, drove at a speed of from 30 to 35 miles per hour over a rough, wavy and slanting road. At such time the ice was jumping up and down on the running board; evidently caused by the manner of driving, and condition of the road. With conditions as described Baughn suddenly swerved his car to the right, and the block of ice was propelled with such force that it traveled from 20 to 30 feet, striking Platt. Under the record we have recited it is our opinion that it cannot be said that the putting of the ice on Baughn's car, including its attendant circumstances, was the proximate cause of Platt's injuries.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court affirmed.

Opinion adopted by the Supreme Court, June 19, 1934.