**WM. CAMERON & CO., Inc., v. THOMPSON.**

No. 11355.

Court of Civil Appeals of Texas. San Antonio.

Oct. 13, 1943.

Rehearing Denied Nov. 10, 1943.

Sleeper, Boynton, Darden & Burleson, of Waco, for appellant.

Davenport & Ransome, of Brownsville, for appellee.

MURRAY, Justice.

This suit was instituted by Guy A. Thompson, as trustee for the St. Louis, Brownsville and Mexico Railway Company, against Wm. Cameron & Company, Inc., to recover indemnity and, in the alternative, contribution for money paid out by the Railway Company to one L. J. Benton, its employee, in settlement of a claim arising out of injuries sustained by said Benton while working for the Railway Company, at Harlingen, Texas, on November 8, 1940.

The cause was submitted to a jury on special issues, and in keeping with their

answers thereto judgment was rendered in favor of the Railway Company and against Cameron & Company in the sum of $1,175, being one-half the sum paid by the Railway Company to Benton.

From this judgment Wm. Cameron & Company, Inc., has prosecuted this appeal.

The jury found, in answer to issues 1 and 3–A, that Cameron & Company's employees were guilty of negligence in failing to block the wheels of a hand truck in one of the box cars when they left for lunch, and in failing to close the door of the car during such lunch hour.

■ Appellant, Cameron & Company, first contends that as a matter of law such acts could not constitute negligence on its part. We sustain · this contention. The facts show that Cameron & Company maintained a warehouse in Harlingen, Texas, and that the Railway Company had built a spur track adjacent to the warehouse under a contract with Cameron & Company, to the effect that Cameron & Company would pay all damages caused by the negligence of its employees and one-half of all damages caused by the concurrent negligence of the employees of the Railway Company and those of Cameron & Company. Two freight cars were spotted at this warehouse and the employees of Cameron & Company had begun the unloading thereof. One car contained steel sheets and the other contained flooring. One Selby, the shipping clerk for Cameron & Company, decided that the unloading would be expedited if the position of the cars were reversed, and with this in mind called the Railway Company and asked that a switching crew be sent to the spur track. At 12 o'clock noon the unloading crew left the freight cars for the purpose of eating their lunches. They left a small hand truck partly loaded with steel sheets in one of the cars. They did not block the wheels of this truck, nor did they close the door to the car. There was a gang-plank or runway leading from the freight car to the door of the warehouse. At 12:30 p. m. the switching crew arrived at the warehouse. L. J. Benton, one of the brakemen, went to the office of Cameron & Company and found every one gone to lunch except a bookkeeper, one Lamb. Lamb told Benton that Selby had left no instructions with him, but he presumed that Selby wanted the positions of the cars switched. Benton agreed that this was evidently what was wanted and returned to the switch track to accomplish this task. The switching crew was composed of an engineer, a fireman and two switchmen. The other switchman's name was Sims. Sims and Benton inspected the cars and discovered the hand truck in its partly loaded condition and its wheels unblocked. Sims picked up a piece of 1 by 4, about 12 or 14 inches long, and placed it against a wheel of the hand truck. Sims and Benton, assisted by the bookkeeper, Lamb, then rolled back the runways from the freight cars, but did not close the doors of the cars. They then began the switching operations. During such operations the hand truck rolled out of the door of the car, struck Benton and broke his leg. The Railway Company settled with Benton for the sum of $2,350, and instituted this suit against Cameron & Company seeking to recover the entire sum if the accident was found to have been caused by the sole negligence of Cameron & Company, or one-half thereof if it should be determined that both were negligent. The jury, as heretofore stated, found that the employees of Cameron & Company were negligent in not blocking the wheels of the hand truck, and in not closing the door to the car, and that such negligence was a proximate cause but not the sole cause of Benton's injury, and that likewise the employees of the Railway Company were negligent in not sufficiently blocking the wheels of the hand truck and in not closing the doors of the cars before beginning their switching operations, and that such negligence was a proximate cause, but not the sole cause, of Benton's injuries. We have concluded that the employees of Cameron & Company were not negligent in not blocking the wheels of the hand truck or in not closing the door of the car while they were away at lunch, because there was no danger to any one so long as the runway remained in place and the car remained stationary.

■ Even if it be negligence to thus leave the hand truck unblocked and the car door unclosed, such negligence could not, as a matter of law, be proximate cause of Benton's injuries, because the employees of Cameron & Company could not reasonably have contemplated that the switching crew would arrive during their absence and negligently proceed to switch the cars without blocking the wheels of the hand truck and closing the door of the car. One is not required to contemplate the negligence of another. St. Louis Southwestern Ry. Co.

v. Arey, 107 Tex. 366, 179 S.W. 860, L.R.A. 1916B, p. 1065; San Angelo Water, Light & Power Co. v. Anderson, Tex.Civ.App., 244 S.W. 571; Payne v. Doubtful, Tex.Civ. App., 236 S.W. 134.

Benton testified in effect that it was his duty to inspect the cars and to see that they were in proper condition to be switched. This he did and discovered their real condition. He thought that Sims had sufficiently blocked the hand truck and he simply neglected to close the door of the car. The employees of Cameron & Company had a right to expect Benton to do his duty as a switchman before he rolled back the runway to the car and began the switching operations. There was no entrapment or hidden danger and Benton was fully aware of the conditions before he began the switching operations. Under all the circumstances we are unwilling to hold that the employees of Cameron & Company should have reasonably foreseen and contemplated that Benton would come with the switching crew during the lunch hour and in their absence roll back the runways, fail to sufficiently block the wheels of the truck, and without closing the door to the car negligently begin switching operations. As was said by Chief Justice Gaines in Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 164: "In our opinion, nothing short of prophetic ken could have anticipated * * * the combination of events which resulted in the injury of the person of the plaintiff."

The most that could have been contemplated by the unloading crew was that the burden of blocking the wheels of the truck and the closing of the car door would have been placed on the switching crew. They could not have reasonably contemplated that the switching crew would attempt to move the car, after they inspected the same, without blocking the wheels of the hand truck and closing the car door. Southern Union Gas Company v. Madeley, Tex.Civ.App., 55 S.W.2d 599.

It occurs to us that if the act of the unloading crew in leaving the hand truck in the car with the door open could be regarded as any cause of Benton's injuries, certainly it was a remote cause, and the proximate cause of such injury was the negligence of the switching crew in failing to properly block the wheels of the hand truck and close the door of the car before beginning switching operations. As was said by Judge Critz in Phoenix Refining Company v. Tips, 125 Tex. 69, 81 S.W.2d 60, 61: "A prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible. If such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition." (Citing authorities.)

It occurs to us that a better illustration of remote and proximate cause could not be found than is furnished by the facts in the case at bar.

Appellee relies strongly upon the case of Missouri-K.-T. Ry. Co. v. McLain, 133 Tex. 484, 126 S.W.2d 474, 475. In that case it is stated: "The jury acquitted McLain of all acts of contributory negligence charged by the Railroad, and also acquitted the driver of the automobile of any act of negligence." In the case at bar the jury convicted the switching crew of negligence proximately causing Benton's injuries, and it is clear that but for such negligence Benton could never have been injured in the manner in which he was injured, or in any such similar manner. McLain's injuries and death were directly caused by the negligence of the Railway Company, without the intervening negligence of any one else, while in the case at bar the alleged negligence of the employees of Cameron & Company was not the direct cause of Benton's injuries, and could not have in any way caused Benton's injuries except for the intervening negligence of the employees of the Railway Company.

Independent of what has been said above, there is another error in this record sufficient to require a reversal of the judgment. The trial judge refused to submit the issue of contributory negligence on the part of Benton, although such issue was properly requested by appellant. It is true that "contributory negligence" as a complete defense has been abolished as to interstate commerce by the 1939 amendment to the Federal Employers' Liability Act, Title 45, U.S.C.A. §§ 51 et seq., 53, and as to intrastate commerce by Art. 6440, Vernon's Tex.Civ.Stats., but by these same provisions "contributory negligence" is retained to the extent that the amount of damages may be diminished or reduced in proportion to the amount of contributory negligence. The jury found that the employees of the Railway Company were guilty of

negligence proximately causing Benton's injuries, and by such finding the jury certainly intended to include Benton himself. If the issue of "contributory negligence" had been submitted to the jury, then the jury would have been required to find by what percentage such contributory negligence contributed as a proximate cause to the accident. Thus the final amount of recovery, if any, would have been reduced in proportion to the amount caused by the contributory negligence of Benton.

■ Appellee contends that the amount of recovery as between the Railway Company and Cameron & Company was fixed by a second agreement entered into between the Railway and Cameron & Company, and the only question at issue was as to whether Cameron & Company should pay all, one-half, or none of the amount so fixed. If this contention be true then, of course, contributory negligence was out of the case, but we conclude that the agreement did not go nearly so far as appellee contends. The pertinent part of this second agreement is as follows:

"Now, Therefore, it is agreed between the Trustee and the Industry (Cameron & Company) that the action of the Trustee in compromising and settling (if he shall) the claim of said L. J. Benton, shall be without prejudice to any right of the Trustee or the Railway under the aforementioned contract dated November 19, 1930, or otherwise, to have recourse against the Industry for indemnity or contribution for the amount paid by the Trustee to the said L. J. Benton in the settlement and compromise of such claim; and it is further agreed if such settlement and compromise shall be made for a sum not exceeding $3500.00, it will be presumed, as between the parties hereto, in any suit by the Trustee or the Railway or both against the Industry, for such indemnity or contribution, that the amount of such settlement represents at least the amount of actual damages sustained by said Benton.

"The making of this agreement shall not be construed as an admission on the part of such damage to the Trustee or the Railway under said aforementioned contract or otherwise."

As we construe the agreement it went no further than to stipulate that Benton had been actually injured in at least the amount of any settlement which might be made by the Railway Company that did not exceed the sum of $3,500, and that the question of liability to Benton by Cameron & Company for any part of said amount was not in any way agreed upon, but was left open for future determination. Therefore, even if Benton in keeping with the agreement had been actually damaged in the sum of $2,350, for which amount the Railway Company had settled, nevertheless, if Benton's negligence had contributed to cause this damage Cameron & Company would not be required to pay that portion of such damage as was caused by the negligence of Benton himself.

For the reasons heretofore stated the judgment will be reversed and judgment here rendered that the Railway Company recover nothing from Cameron & Company, and pay all costs of this and the court below.

Reversed and rendered.