## SWILLING et al. v. KNIGHT.

### No. 6302.

Court of Civil Appeals of Texas. Texarkana.

Sept. 18, 1947.

Thompson, Knight, Harris, Wright & Weisberg and William A. Rembert, Jr., all of Dallas, for appellants.

H. A. Leaverton, of Lockney, for appellee.

HALL, Chief Justice.

This is an appeal from an order of the District Court of Panola County overruling pleas of privilege filed by appellants R. T. Swilling, Sr., R. T. Swilling, Jr., and B. M. Boyd, comprising the partnership of R. T. Swilling and Sons, in which it is alleged that their residence is in Hill County, Texas. Appellee sought to retain venue, in Panola County under Sections 9 and 23 of Article 1995, R.S., Vernon's Ann.Civ.St. art. 1995, subds. 9, 23. Appellants' several pleas were controverted and after a hearing before the court they were overruled.

The controlling question in this case is presented by appellants' points six and seven, wherein they assert that the alleged cause of action of appellee against them arises out of a contract with the city of Carthage; that the negligent acts charged against them by appellee are with respect to work performed by them as contractors for the city of Carthage, in compliance with plans and specifications for the construction of a water and sewer system for said city; that where the evidence shows contractors performed the work of laying the water and sewer lines in accordance with the plans and specifications set out in the contract under the supervision

of the city's engineer, no prima facie meritorious cause of action against appellants is established, even though the city might be liable to the property owner for special damages arising from such construction work.

The main cause of action out of which this case grows was one for damages instituted by appellee Knight against appellants. In that action it is alleged that appellee is the owner of a garage located upon the west side of and abutting Shelby Street, in the southern part of the city of Carthage. It is also alleged in the main cause of action that appellants entered upon said street and "excavated a large deep ditch for approximately one-half mile or more for the purpose of laying a sewer line and/or water line" and as stated in appellee's brief "in an improper and negligent manner, form, time and place, together with an improper and negligent filling of said ditch and finishing the street, resulting in the blocking of the egress and ingress to plaintiff's place of business and damaging plaintiff." Appellee states further in his brief:

"It is true that appellee complained that the ditch was not properly tamped and filled and the dirt on the shoulder was not removed and the surface of the shoulder was not put in its original condition *but the real central point of both his allegation and his proof is that the defendant (appellants) without right or authority entered a public street on which appellee abutted and dug a deep and wide ditch and thereby blocked appellee's egress and ingress.* It was appellants' acts that dug the ditch which was dug at the wrong time, in the wrong place, in the wrong manner." (Italics ours.)

We shall consider the alleged acts of negligence from this viewpoint.

The undisputed evidence reveals that on February 15, 1946, the city of Carthage, Texas, entered into a contract with appellants to lay sewer and water lines along the streets within said city. This work was under the supervision of one Chas. F. Reaney, an engineer. The testimony shows further that work was begun under the contract in the spring of 1946 and was concluded some twelve months later. Appellee owns a garage on the west side of Shel-

by Street in the city of Carthage. The testimony shows without dispute that in November, 1946, appellants dug a ditch along the west side of said street and about six or eight feet west of the pavement on said street at a point fixed by the engineer, and laid a water or sewer line. This was done at the beginning or during a rainy spell and the undisputed evidence shows that the ground was wet and rotten and very difficult to handle. Also, it is shown without dispute, that in this particular area of Carthage about two feet below the surface quicksand was encountered and the ditch would cave in. At one place near appellee's property it caved under the highway some six feet and it had to be filled in with gravel at the city's expense. The pipe was laid, the evidence shows, directly behind the ditch-digging machine to prevent excessive caving of the ditch. Gravel was tamped around and over the pipe. A bulldozer was used to push the dirt back into the ditch and left some six to ten inches above the level of the ground to allow for settling. During all the process of laying this particular pipe line the engineer, or one of his assistants, was present and directed the work of the contractors. The engineer sanctioned the method and manner appellants used to dig the ditch, lay the pipe and fill up the ditch. At the time of the trial in the court below the engineer had accepted the work of appellants under the contract for the city of Carthage.

In 43 C.J., 1159, paragraph 1917, it is said:

"A contractor constructing a drain or sewer or making other public improvements for a municipality under its supervision and control is not liable for injuries resulting to adjoining property, unless the work is improperly or negligently performed, nor is such contractor liable where the negligence charged consists in the method adopted under the direction of the city authorities; but for any injury due to his negligence in the performance of the work the contractor is liable."

There is no intimation in this record that the city of Carthage was without authority to contract with appellants for the construction of the sewer and water lines within its corporate limits. This they did and

appellants performed their contract under the direction of the engineer. In such circumstances appellants would not be liable for digging the ditch at the place they did under direct contract with the city of Carthage and under the supervision and surveillance of the city's engineer, and with his approval.

Appellants' contract with the city provides that:

"Whenever in the specifications or drawings accompanying this agreement, the terms or description of various qualities relative to finish, workmanship, or other qualities of similar kind which cannot, from their nature, be specifically and clearly described and specified, but are necessarily described in general terms, the fulfillment of which must depend on individual judgment, then, in all such cases, any question of the fulfillment of said specifications shall be decided by the engineer, and said work shall be done in accordance with his interpretations of the meaning of the words, terms or clauses defining the character of the work."

This provision of course was to give the engineer and contractor some leeway in dealing with situations such as they encountered in front of appellee's property, that is, the rotten, wet earth, and quicksand. In Russell et ux. v. General Construction Co., Tex.Civ.App., 59 S.W.2d 1109, 1110, writ refused, it is said:

"Hence, the city being within its legal right in making the public improvement, and the plaintiff construction company having properly done the work, according to the plans and specifications, there would be no liability for damages against the company, though the street was elevated above the defendants' property and cast water thereon, contrary to the natural flow of the same. The work of the construction company was not its personal act, but that of the city of Merkel, which, under definite conditions, was liable for damages, if any, flowing from the act complained of."

See also Panhandle Const. Co., v. Shireman, Tex.Civ.App., 80 S.W.2d 461; City of Huntsville v. McKay, Tex.Civ.App., 286 S. W. 305; Blair v. Waldo, Tex.Civ.App., 245 S.W. 986.

The undisputed record fails to show a cause of action against appellants, which is fatal to appellee's right to maintain his suit in Panola County.

The conclusions reached above render unnecesary a discussion of the other points advanced by appellants.

Therefore the judgment of the trial court is reversed and remanded, with instructions to transfer this cause, together with all court papers, to the District Court of Hill County, Texas.