John H. GEHRING et al., Appellants,

v.

John STRAKOS, Appellee.

No. 13632.

Court of Civil Appeals of Texas.

Houston.

March 2, 1961.

Motions for Rehearing Denied March 30, 1961.

Second Motion for Rehearing Denied April 20, 1961.

Painter & Painter, J. H. Painter, Jr., Kucera, Lay & Lightfoot, Bennett Lay, Houston, for appellant, John H. Gehring.

James G. Sargent, Houston, Graves, Dougherty, Gee & Hearon, Austin, (on motion for rehearing), for appellant, N. M. Hubbard, Inc.

Robert L. Steely, W. James Kronzer, Houston, Hill, Brown, Kronzer & Abraham, Scardino & Regnier, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a suit for damages for personal injuries. Judgment in the trial court was for plaintiff, and this appeal follows. Appellee, John Strakos, was plaintiff in the trial court. Appellants, John H. Gehring and N. M. Hubbard, Inc., were defendants along with the Austin Road Company, who is not a party to this appeal. For convenience, the parties will be referred to as Strakos, Hubbard and Gehring. The judgment awarded Strakos $437 for medical expenses and $50,000 in damages for pain and suffering, mental anguish and loss of earnings, past and future. Hubbard was awarded indemnity against Gehring.

A brief general statement of the facts is required. In order to have a section of the road, commonly known as the Crosby-Huffman Road, incorporated into the State Farm-to-Market Road System, in accordance with normal procedure, Harris County agreed to secure the necessary additional right of way and to have the fences moved back to the new right of way lines. Right of way deeds were secured in the name of the State of Texas and Harris County entered into a contract with Gehring to remove and relocate the fencing along both sides of the road. On or about the 15th day of May, 1956, Gehring and his employees began the removal of the fences and the relocation of those fences in accordance with the contract. In doing this work Gehring did not fill any of the holes left by the removal of the posts along the original fence line. There was no mention of post holes in his contract with Harris County. On May 2, 1956 the State of Texas entered into a contract with the Austin Road Company to resurface and widen the road, and on May 4, 1956 the Austin Road Company contracted with N. M. Hubbard, Inc., to do the work necessary to get the right of way in condition for surfacing. Except for the installation of certain concrete culvert structures, Hubbard's obligations all preceded the later work to be done by the Austin Road Company. Both Austin Road Company and Hubbard had commenced actual work under their contract prior to July 2, 1956, and barricades had been erected at each end of that part of the road to be improved. The State required that the road be kept open for public use. On July 2, 1956, Strakos approached a gate in the fence at the I. C. Matthews farm, which had been moved by Gehring under the terms of his contract with Harris County. On stepping out of his car, his left leg went into a post hole about three feet deep, causing injuries to his right leg resulting in permanent disability. The hole into which he stepped was one left by Gehring when he moved the fence. It was so obscured by grass as to be very difficult to discover. The County made its final inspection on June 18, 1956, and the work was accepted by the County Engineer on June 19, 1956, but formal acceptance by the Commissioners' Court and final payment occurred on July 12, 1956. Both County and State inspectors knew that the holes left by removal of fence posts had not been filled.

Gehring contends that he should have been relieved from liability for the injuries to Strakos for the reasons that: (1) he had completed his work for Harris County in accordance with the plans and specifications; (2) his work had been accepted by Harris County with knowledge on the part of the County and the State of Texas that the post holes had not been filled, and that by reason of such acceptance and the consequent loss of control of the premises

on his part his conduct in failing to fill the hole or to properly warn the public of the concealed hole was not negligence in that he was under no duty to Strakos or, if his conduct did constitute negligence, it was not the proximate cause of the injuries he received. Appellee replies that Gehring's performance under the contract had not been formally accepted by the County, and if the doctrine of "practical" acceptance applies in Texas, it does not apply in this case because of contract provisions; that (admitting arguendo) acceptance of the work by the County before the injury to Strakos, nevertheless Gehring is not relieved of liability by the general rule of law that the acceptance of a contractor's work by the contractee relieves the contractor of future liability to third persons because the rule does not apply in the case of concealed or hidden defects, nuisances or inherently dangerous conditions and that a common law obligation to use due care for the safety of the public arose from his contract with Harris County.

The general rule of nonliability of contractors after acceptance of the work by the contractee appears to be followed in Texas. In the case of T. J. Mansfield Const. Co. v. Gorsline, Tex.Com.App.1926, 288 S.W. 1067, 1068, rehearing denied, Tex. Com.App., 292 S.W. 187, the Mansfield Constructon Company had a contract with Wichita County to construct ten box culverts in a county road. The County was to repair the road after the culverts were in place. Mansfield completed its work and it was inspected and accepted by Wichita County. The County in its work had covered nine of the culverts when Mrs. Gorsline one night drove down the road and into the ditch across the road and into the culvert. In the original opinion the Court held:

"Plaintiff in error's first assignment of error questions the correctness of the judgment of the Court of Civil Appeals in holding that the trial court did not err in overruling plaintiff in error's first proposition of law, which was based upon the second assignment of error, this proposition being as follows:

" 'Plaintiff in error having completed all of the work that it had contracted to do for the county in the construction of said culverts and the county having accepted the work and having prepared the road for the traveling public, save and except at the point where the accident occurred, and the county having full control of said highway long before the accident occurred, plaintiff in error was under no obligation or duty to maintain signals or warning signs on said highway, and therefore not liable for such damages as defendants in error received.'

"This assignment of error, in our opinion, should be sustained and as the uncontradicted testimony establishes the facts in the proposition under this assignment, we are of the opinion that the proposition quoted is a correct statement of the law of the case."

Further in the opinion the Court said:

"It appears from the contract between the plaintiffs in error and Wichita county that the plaintiffs in error were charged with the duty to do certain things during the performance of the work which under the contract they were to do, and, it having been shown that at the time the accident occurred resulting in the injuries for which damages are claimed the plaintiffs in error were not engaged in the performance of this work, but that it had been completed and the work accepted, there was no duty resting upon the plaintiffs in error the failure to perform which could be made the basis of damages for injuries sustained by Mrs. Gorsline. * * *

"Evidently the negligence which is the failure to exercise that degree of care which persons of ordinary pru-

dence would thus use under the same or similar circumstances was attributable to the failure of the duly authorized agent of Wichita county to use due diligence in filling up the culvert where the accident occurred on Saturday night or the following day before the accident occurred. Had this duty rested upon the plaintiffs in error as a part of their contract with Wichita county, under the facts found by the jury the plaintiffs in error would have been liable for damages. But, it has been seen that the contract did not require the plaintiffs in error to perform this duty, there being an absence of any affirmative testimony tending to show the existence of such a duty, and, upon the contrary, the testimony affirmatively shows that no such duty rested upon them. So, in our opinion, the defendants in error have not shown any cause of action against the plaintiffs in error."

■ Contractual duty is measured by the terms of the contract and ends with completion of work and acceptance unless by the terms of the contract duty is extended. Annotations, 123 A.L.R., pp. 1197/1205; Annotations, 13 A.L.R.2d, pp. 195/252; Annotations, 58 A.L.R.2d, pp. 869/898; T. J. Mansfield Const. Co. v. Gorsline, supra; S. Blickman, Inc. v. Chilton, Tex.Civ.App., 114 S.W.2d 646; Nedler v. Neece Lumber Co., Tex.Civ.App., 63 S.W.2d 403. There can be no negligence unless a duty is present. However, where no duty is imposed by contract, it may be imposed by operation of law. 65 C.J.S. Negligence § 4, p. 344; T. J. Mansfield Const. Co. v. Gorsline, supra; Independent-Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; Thompson v. Graham, Tex.Civ.App.1960, 333 S.W.2d 663. Violation of such duty is not actionable unless such violation is the proximate cause of damage. Ball v. Gulf States Utilities Co., Tex.Civ.App., 123 S.W.2d 937 It is generally held that one is not required to foresee the negligent action of a third party or, to put it another way, that the chain of causation is effectively broken when the negligent action of another legal entity intervenes and thereby becomes an efficient producing cause of the injury. Hartford v. Coolidge-Locher Company, Tex.Civ.App., 314 S.W.2d 445; Wm. Cameron & Co., Inc. v. Thompson, Tex.Civ.App., 175 S.W.2d 307; Bledsoe v. City of Amarillo, Tex.Civ.App., 143 S.W.2d 215, writ ref.; Annotations, 13 A.L.R.2d, pp. 207/209. It appears that under the doctrine of the Gorsline case cited above we could rest our holding on the absence of a duty on the part of Gehring. However, we feel that independent of the contract Gehring owes a duty to the traveling public to warn where he has created an imminently or inherently dangerous condition in a right of way or a public street. Jones v. Beck, Tex.Civ.App., 109 S.W.2d 787, writ ref.; Morgan Warehouse & Commercial Co. v. Gilbert Mfg. Co., Tex.Civ.App., 60 S.W.2d 1053, writ ref.; Hartford v. Coolidge-Locher Company, supra; Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 156, 81 S.W. 282, 1 L.R.A.,N.S., 198; Note, Baylor Law Review, Vol. 5, pp. 94/97. Ordinarily an excavation in a public street is considered inherently dangerous, Cage et al. v. Creed et al., Tex.Civ.App., 308 S.W.2d 78, as are hidden defects. Jones v. Beck, supra. The contractor's duty continues after acceptance where the defective condition of the work is hidden unless the condition is known to or apparent to the contractee. Morgan Warehouse & Commercial Co. v. Gilbert Mfg. Co., supra. Here the post hole was left in the right of way and was covered with grass, but the condition was known to Harris County, Gehring's contractee, and to the State of Texas, the owner of the premises.

■ The obstruction of a public way by a property owner constitutes a public nuisance and if the obstruction is constructed by an independent contractor, both the contractor and the owner may be liable in damages to one injured thereby, and the rule is the same in the case of an excavation. Kampmann v. Rothwell et al., 101

Tex. 535, 109 S.W. 1089, 17 L.R.A.,N.S., 758; Glade v. Dietert et ux., 1956, 156 Tex. 382, 295 S.W.2d 642. However, an excavation or structure in a public roadway constructed by the State or a political subdivision of the State in the process of constructing or improving the roadway is not per se a nuisance. To be actionable negligence resulting from the maintenance of a nuisance must be a proximate cause of damages. Werner v. Trout, Tex.Civ.App., 2 S.W.2d 525, error ref.; Dudding et ux. v. Automatic Gas Co., 145 Tex. 1, 193 S.W.2d 517; City of San Angelo v. Sitas, 143 Tex. 154, 183 S.W.2d 417.

■■■ The contractor, here Gehring, is not responsible for the expected result of his work when done in accordance with the plans and specifications, although he is responsible for his negligence in the manner of doing such work. Swilling v. Knight, Tex.Civ.App., 205 S.W.2d 421; Glade v. Dietert, supra; Panhandle Construction Co. v. Shireman, Tex.Civ.App., 80 S.W.2d 461; Annotations, 13 A.L.R.2d 196, 197.

This is an age of specialization and a contractor should be able to bid on excavation work without including in his contract price the cost of guarding his work until final completion of the entire project or, in the event of abandonment of the project, the cost of refilling the excavation, or, as in this case, the cost of filling the holes which was not required or authorized, though not prohibited by the contract. Prosser on Torts, 2nd Ed., Hornbook Series, pp. 517 et seq.; 13 A.L.R.2d 197.

On the acceptance of his work by Harris County, Gehring lost control of the situs of the work. The maintenance of barriers or warning signs might have constituted a real interference with the work of Hubbard, and he had no legal or contract right to do so. City of Austin v. Schmedes, Tex.Civ. App., 270 S.W.2d 442, affirmed in part and reversed in part 156 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680.

Strakos, however, contends that by the terms of Gehring's contract with Harris County a duty to protect people using the roadway from hazards created by construction is imposed which continued after acceptance of the work or at least until the formal acceptance on July 12, 1956.

He cites provisions of the contract, paragraph 4.9, requiring Gehring to "provide, at his expense, means of ingress and egress for residents along any closed section of the work and to provide property owners a means of access to a public road"; also the provision of paragraph 4.10:

"Prior to closing any section of the project to traffic the contractor shall furnish, erect and maintain at no expense to the County suitable barricades, warning signs, flares and red flags, * * * Unless otherwise set forth in these specifications, the contractor shall receive no direct compensation for furnishing, erecting, and maintaining the necessary barricades, lights, flares, signs or for any other incidentals necessary for the good and proper safety, convenience, and direction of traffic during the period prior to final inspection and acceptance by the County."

He also cites the provision of the contract requiring the contractor to take every necessary precaution against injury or damage to any part of the road by action of the elements or for any other cause and to maintain the road in first class condition until final acceptance. Another provision of the contract called to our attention provides that the County Inspector's opinion would not

"* * * revoke, alter, enlarge, relax or release any requirement" of the specifications, and that "It is mutually agreed between the parties hereto, that no estimate of payment made under this contract except the final payment shall be conclusive evidence as to the performance of this contract either wholly or in part against any claim of

the County, and then not until the lapse of thirty days after the acceptance of the work by the County; and no payment shall be construed to be in acceptance of any defective work or improper materials, or a release from any claim for damages."

■ While the evidence shows that barricades were erected at each end of the section of the road to be improved under the contracts with Gehring and Austin Road Company, both the contract of Gehring with the County and Austin Road Company with the State provided that no portion of the highway should be closed to traffic without authorization of the engineers, and further provided that in any closed section of the highway provision should be made for means of ingress and egress for residents within such section and for adequate detours to be arranged and constructed. There is no evidence that the Engineer had ordered the entire section of road to be improved closed and there is evidence that the road in front of the Matthews property was in use by the public. It would seem, however, that the erection of the barricades by the Austin Road Company and their maintenance by Hubbard indicates that the section of the road so enclosed was under the control of Austin Road Company and Hubbard. Since the road was not closed, the provision for ingress and egress, detours, barricades, signs, flares, etc., would not be material here. The provisions of paragraph 4.10 are not applicable for these reasons: (1) The section of the road in question here was not closed; (2) Prior to the accident in question Gehring's work had been inspected and approved by the County Inspector, his claim for final payment had been approved by the County Commissioner and the County Engineer had certified that the work had been performed in accordance with the contract and accepted, constituting practical acceptance; (3) the finding by the jury on sufficient evidence that the work was accepted on June 19, 1956. It is further evident that the contract provision quoted

above relating to payments concerned disputes arising between the parties to the contract, and, none having arisen, are not material here. We, therefore, hold that no duty to protect the traveling public *continuing after the acceptance of the work* arose by reason of the contract between Gehring and Harris County, the Court erred in overruling defendant Gehring's motion for instructed verdict and motion for judgment non obstante veredicto. In view of this decision, it will be unnecessary to discuss the various additional points raised by Gehring on this appeal.

The defendant Hubbard has briefed thirty points of error. By the first four points he complains of the action of the court in rendering judgment against him for the reason that he owed no duty to Strakos. Basically this conclusion is based on his contention that his contract created no duty except such as might arise out of the work for which he had contracted; that the hole involved here was not a product of his work; that since he had not begun work in the area including the Matthews farm, he had no control over that section of the right of way.

The Austin Road Company was the general contractor on this job. By its contract with the State of Texas it, among other things, undertook to provide for the safety of the traveling public. The contract provided as follows:

"The Contractor shall provide and maintain adequate barricades, warning signs, flares, flags and flagmen at such points and for such periods of time as may be required to provide for the safety and convenience of public travel and Contractor's personnel, and as directed by the Engineer. Flagmen shall be English speaking, courteous, well informed, physically and mentally able effectively to perform their duties and in safeguarding and directing traffic and protecting the work, and shall be neatly attired and groomed at all times while on duty. Flagmen, when

directing traffic shall use the standard flags and signals shown in Instructions to Flagmen published by the. Texas Highway Department.

"Upon completion of the work and before final acceptance and final payment is made, the Contractor shall shape and finish such portions of the roadway as may have been disturbed in making the above provisions for traffic and will be required to leave the entire right of way in a smooth, neat and sightly condition."

Hubbard by his contract with Austin Road Company agreed generally to do all dirt work required by the contract of Austin Road with the State of Texas, including such things as cleaning and scraping the shoulders; removing trees, shrubs, grass, weeds and vegetation; reshaping the road, thereby widening the roadway and moving the ditch back; adding the necessary fill; rolling, sprinkling and packing the roadway. Hubbard also agreed as follows:

"Party of the Second Part hereby assumes the entire responsibility for all obligations and requirements of Party of the First Part contained in the original contract connected with the particular units of work which this contract covers and agrees to do the work entirely in accordance with the plans, specifications and special labor provisions of the original contract and to the satisfaction of the Engineer in charge of the same, and of the Party of the First Part.

"Party of the Second Part shall assume all liability, directly or indirectly connected with the work done under this contract and to guarantee and save harmless Party of the First Part from all claims and damage suits of whatever nature, arising in connection therewith."

It appears from the contract that only Hubbard would work along the shoulders of the road near the old fence line and that all of his work would be completed before the major portion of the Austin Road Company's work would begin.

■ It has been held that one who creates or maintains a dangerous condition on a public highway, is guilty of negligence if he fails to warn of such condition. Not all of these decisions have been based on duties arising from contract. Austin Road Company v. Pope et al., 147 Tex. 430, 216 S.W.2d 563; Adams v. Corbin, Tex.Civ. App., 301 S.W.2d 209; Wedegartner v. Skoruppa, Tex.Civ.App., 236 S.W.2d 216; Overstreet v. McClelland, Tex.Civ.App., 13 S.W.2d 990. In the case of Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 431, 20 A.L.R.2d 853, Henger contracted to supervise and coordinate the construction of the Mercantile National Bank building. Prior to this contract, a shaft had been sunk in the sidewalk to provide access to the basement of the building under construction. This shaft was covered with boards and, over the boards, a canvas. Unknown to Henger, some of the boards were removed and the canvas was replaced. Smith, the employee of another contractor installing equipment in the bank, fell into the shaft and was injured. After trial to court and jury, judgment was rendered in his favor, which was reversed by the Court of Civil Appeals. The Supreme Court, in reversing the Court of Civil Appeals and affirming the trial court, stated:

"The law places upon the owner or occupant of land the duty to use reasonable care to make and keep the premises safe for the use of persons invited to use the premises for business purposes, (citing cases). Included within the class of persons to whom this duty is owed are the employees of contractors performing construction or other work on the premises. (citing cases) When the owner puts some other person in control of the premises or a part of them, such person likewise has the duty to keep the premises under his control in

safe condition. (citing cases) A general contractor on a construction job, who is in control of the premises, is burdened with the duty to use due care to provide a safe place for workmen on the premises, including the employees of other contractors. (citing cases)

"Where the duty to keep premises in a safe condition is imposed on a person in control of them, this duty may include the duty to inspect the premises to discover dangerous conditions, (citing cases); to provide coverings or guard rails or similar devices to protect persons lawfully on the premises from harm, (citing cases); or to warn such persons of the existence of dangers which could not reasonably be expected to be apparent or obvious, (citing cases). The standard by which this duty is measured is that of reasonable care, and whether the duty has been properly discharged depends on the facts of each case."

Quoting further from Smith v. Henger, supra:

"The fact that the boards were removed and not replaced by some third party, and not by one of Henger's employees, does not excuse Henger from his duty to see that the premises were in a reasonably safe condition or to inspect the shaft for the purpose of discovering and remedying or giving warning of hidden dangers. (citing cases)"

We think this case is quite analogous on the facts to the case under consideration, considering that the jury in the case under consideration found that Hubbard had control of the premises, which finding is supported by the evidence in the record.

The courts of Texas have on several occasions construed contracts containing provisions very similar to those with which we are concerned here and have held that such contracts create a duty on

the part of the contractor to use ordinary care to avoid injury to the traveling public. John F. Buckner & Sons v. Allen, Tex.Civ.App., 289 S.W.2d 387; City of Austin v. Schmedes, Tex.Civ.App., 270 S.W.2d 442; Eubanks v. Schwalbe, Tex.Civ.App., 55 S.W.2d 906, affirmed on this point United States Fidelity & Guaranty Co. v. Eubanks, 126 Tex. 405, 87 S.W.2d 248.

In Eubanks v. Schwalbe, supra, Eubanks was fatally injured when he drove his automobile into an excavation on a State highway near Lubbock. The excavation had been dug by the State Highway Department under an agreement with the Santa Fe Railway Company. Some third party or persons had prepared a detour around the excavation, but no warning signs had been placed so as to indicate the presence of the detour or of the excavation. The trial court sustained a demurrer to plaintiffs' petition and on their refusal to amend rendered judgment dismissing the case. The plaintiffs had pled that Schwalbe "under his contract with the State Highway Department took active charge and control of the right of way for the highway between the town of Lubbock and the line of Lubbock and Hale Counties, which included the excavation under the tracks of the Railway Company and the approaches thereto where the accident occurred, and began preparing the right of way for the paving, including the laying of water lines and other necessary work on the premises." Plaintiffs further alleged that "in addition to the duties above alleged, H. L. Schwalbe, by his contract with the state, promised and agreed to erect and maintain sufficient barriers, lights, warnings and signs in front of such excavations to warn the traveling public of the danger thereof." The Amarillo court had this to say with reference to Schwalbe's duty:

" 'There are wrongs which will maintain an action on the case, known to the common-law pleading, committed in the nonobservance of duties which are but the implication of contract ob-

*ligation.* Wherever there is carelessness, want of reasonable skill, or the violation or disregard of duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action in tort lies in favor of the party injured. If the transaction had its origin in a contract which places the parties in such relation as that in performing or attempting to perform the service promised the wrong is committed, then the breach of the contract is not the gravamen of the action. There may be no technical breach of the letter of the contract; the contract in such case is a mere inducement and should be so pleaded. It induces, causes, creates the conditions or state of things which furnishes the occasion for the wrong.' Pecos & N. T. Ry. Co. v. Amarillo Street Railway Co. (Tex.Civ.App.) 171 S.W. 1103, 1105." [55 S.W.2d 907].

"The Supreme Court of Alabama in Thaggard v. Vafes, 218 Ala. 609, 119 So. 647, 649, says: 'While the authorities are agreed that a mere breach of contract is not a wrongful or negligent act, within the meaning of the statutes giving a right of action for wrongfully causing death, yet they are also agreed that the negligent or tortious breach of a duty to the person whose death is caused thereby is within the statute, though such duty arises out of contract. (citing cases from other jurisdictions)'

"The Supreme Court of Missouri, in Braun v. Riel, 40 S.W.(2d) 621, 623, 80 A.L.R. 875, says: 'It is well settled that, while a "tort" is a wrong done independent of contract, there are torts committed in the nonobservance of contract duties. And if a tort arising out of nonobservance of such duties results in a death, a surviving person entitled to sue may avail himself of the Wrongful Death Statute.'

"A contractor doing construction work on a public highway under a contract with the highway commission is required to exercise ordinary care to protect travelers who are rightfully using the highway, and is guilty of actionable negligence for failing to give warnings of dangers which result in injury to such traveler. Overstreet v. McClelland (Tex.Civ.App.) 13 S.W. (2d) 990, and authorities cited. See, also, T. J. Mansfield Construction Co. v. Gorsline (Tex.Com.App.) 288 S.W. 1067; 29 C.J. 678."

In John F. Buckner & Sons v. Allen, supra, a subcontractor had placed oil on the roadway, following which it rained and made the area quite slick. The plaintiff was injured when the car in which he was riding went out of control. It was claimed that Buckner had not adequately warned of the dangers incident to using the roadway. Buckner contended that it had no "control over the situs of said accident; and was not required or charged with the duty of maintaining said premises and that if any actual duty was owed to plaintiff, it was on the part of the other defendants who were solely in charge of said premises at the time the alleged accident occurred." The court held that Buckner's contract obligations, granting the right to control the subject premises (which was in identical language to the contract obligations assumed by Hubbard here), gave rise to the duty to warn, even though Buckner was not in physical control of the situs of the occurrence. Hubbard was charged with knowledge of any dangerous conditions that a reasonable inspection would have revealed because his duty to keep his premises in a reasonably safe condition for use by the public included a duty to inspect. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391. Here the jury found on adequate evidence that Hubbard failed to make such inspection of the premises as would have been made by a reasonably prudent person under the same or similar circumstances.

The findings of the jury in answer to Special Issues Nos. 18, 19, 21, 22, 24 and 25 convict Hubbard of negligence which was

a proximate cause of the injuries sustained by Strakos. These jury findings are supported by the evidence.

■ Hubbard earnestly argues that no duty on his part arose with reference to the particular hazard causing injury to Strakos; that since the hole was not a product of his work, the work required by his contract, or, indeed, of the work required by Austin Road Company's contract with the State, no duty arose by virtue of the contracts. A careful examination of the contracts demonstrates that both contractors in undertaking the "work" (defined in Austin Road Company's contract as, "The completed work contemplated in and covered by the contract") assumed a duty to use ordinary care to protect the traveling public from dangerous conditions of which they were aware, or which they could have discovered by reasonable inspection. The fact that the jury found that the injuries sustained by Strakos did not "arise out of the work done" by Hubbard in "connection with his contract with Austin Road Company" does not absolve him from liability. The issue was not controlling and can be disregarded. Obviously the injuries might have been caused by the *failure* to do work in connection with his contract.

■ Hubbard complains that Special Issues Nos. 17, 24 and 28 are not supported by pleadings and should not have been submitted over his objection. Special Issue No. 27 inquires as to whether or not under the circumstances Hubbard failed to make such inspection for holes in the right of way prior to July 2, 1956 as would have been made by a reasonably prudent person in the exercise of ordinary care. Special Issue No. 28 inquired as to proximate causation. There was no pleading that Hubbard knew the hole existed or should have discovered its existence. Both parties offered evidence on the Issue without objection. No exception to plaintiff's petition was presented which would call this omission to the attention of the court. McDonald, Texas Civil Practice, Vol. 2, p. 568, states:

"It must be emphasized, however, that a petition which shows a relationship between the plaintiff and the defendant imposing upon the latter a duty to exercise ordinary care, and which then states, without elaboration, that the defendant has negligently acted or failed to act, thus breaching such duty, and that such negligence proximately cause damage, states a 'cause of action.'"

Plaintiff's petition alleges generally that Hubbard had begun work under his contract and that he and his agents, servants and employees were working at the location of the concealed post hole and did nothing to eliminate the danger or give warning of its presence. The petition then alleges specific acts of negligence on the part of Hubbard. Giving plaintiff's petition the benefit of reasonable intendments, it was sufficient, in absence of special exception, as an allegation that defendant was in control of the premises. A duty to inspect for hidden dangers was raised as a matter of law. Since there was no pleading that a breach of this duty constituted negligence, bearing in mind the fact that plaintiff specifically pled various acts of negligence, the answers to Issues Nos. 27 and 28 would not authorize a judgment in plaintiff's favor.

However, the jury's answers to Special Issue No. 27 (that Hubbard failed to make a proper inspection) negatived a possible defensive issue, i. e., that after proper inspection defendant had not discovered the hole, and so as not subject to the objection made. Since other findings of negligence were made by the jury, no reversible error is presented. Special Issue No. 28 can be disregarded.

■ Special Issue No. 17 (inquiring as to whether or not Hubbard should have discovered the existence of the hole) is a subsidiary issue bearing on the duty to warn of the dangerous condition or to make it safe. In the absence of special exception, the pleading was sufficient. It is not necessary to specially plead duty if facts suffi-

cient to raise duty as a matter of law are pled.

By Points 24, 25, 26 and 27 Hubbard complains of the submission and consideration by the Trial Court of Special Issue No. 16 relating to his right of control of the land on which the post hole was located. The right to control arises as a matter of law out of the contracts between Hubbard, Austin Road Company and the State of Texas. If material, control in fact or actual control would be a question of fact for the jury. The Issue inquired about "right to control," and therefore was not an ultimate issue, being a matter of construction of written instruments. In any event, plaintiff having pled that defendant Hubbard was engaged in work on the project under contract with Austin Road Company in the vicinity of the hole, his right of control was placed in issue by the pleadings in the absence of special exception. The jury answered this Issue favorably to plaintiff and their answer is not against the preponderance of the evidence. Hubbard contends that in order to have "control" of the premises, one must have power to exclude all others. Here the contract provided that the road should be kept open for use by the public, but it also provided a method for closing portions thereof in the event it became necessary for the prosecution of the work or the protection of the public. This point has been answered by cases previously cited. Eubanks v. Schwalbe, supra; John F. Buckner & Sons v. Allen, supra; Smith v. Henger, supra; Restatement of the Law of Torts, § 346.

The 28th Point relied on by Hubbard (and Gehring) as error is to the effect that insurance was injected into the case. On voir dire examination of the jury panel, a prospective juror in answer to a question by plaintiff's counsel, as to whether or not any member of the panel knew counsel for Hubbard, replied, "I have. I don't know whether or not Mr. Sargent remembers me or not but I am the personnel manager at Schott's Bakery and he represents the U. S. F. & G." A motion for mistrial was made out of the presence of the jury, which was denied. This motion was reported and is certified by the official court reporter, but it is not embodied in a formal bill of exceptions approved by the trial court, nor is the transcript of the reporter's notes approved by the various attorneys of record as being correct. While by virtue of Rule 372(e), Texas Rules of Civil Procedure, the motion is properly before us, it presents no error since the facts set out in the motion are not certified as correct or complete by the trial court. The Point was not properly preserved. Bashrum v. Vinson, Tex.Civ.App., 330 S.W.2d 538, writ ref., n. r. e.; Pritchett v. Highway Insurance Underwriters, Tex., 309 S.W.2d 46. Appellant Hubbard's 29th Point complains of plaintiff's argument to the jury contending that it had the effect of informing them of the effect of their answers. The trial court did not err in overruling Hubbard's motion for mistrial. No objection was made to the argument, nor was a request made that the court instruct the jury to disregard the argument. The effect of the argument was not so harmful as that it could not be cured by an instruction from the court. The error was not properly preserved by a formal bill of exceptions, nor were the facts set out in the motion certified as correct and complete. Bashrum v. Vinson, supra.

Finally, Hubbard (and Gehring) complains that the trial court erred in entering judgment and overruling motions for mistrial for the reason that the award of damages was grossly excessive. Without lengthening this opinion by the extensive quotation of testimony, it is sufficient to state that the testimony supports findings that as a result of the injuries sustained plaintiff has suffered a fifty per cent general disability; that he has suffered pain in the past and will do so in the future, though not necessarily constantly; that he is unable to work steadily as a carpenter and unable to perform the work of a farmer

(his previous occupation); that he has a permanent shortening of his leg and a permanent aggravation of the arthritic condition in his back. No circumstances appear in the record tending to show that the verdict was the result of passion, prejudice or other improper motive, nor is the verdict so excessive as to shock a sense of justice in the minds of the Court. Green v. Rudsenske, Tex.Civ.App., 320 S.W.2d 228; Bee Line Coaches v. Folterman, Tex.Civ. App., 207 S.W.2d 986.

All other points of error presented have been considered and denied.

The judgment insofar as it awards damages against John H. Gehring is reversed and here rendered that plaintiff take nothing, but insofar as it awards plaintiff damages against N. M. Hubbard, Inc., is affirmed. That portion of the judgment awarding N. M. Hubbard, Inc., indemnity against John H. Gehring is reversed and here rendered denying indemnity. Costs in the trial court are assessed against Hubbard and on appeal one-half against Hubbard and one-half against Strakos.

On Motions for Rehearing.

Both appellant, N. M. Hubbard, Inc., and appellee, John Strakos, have filed motions for rehearing. We believe our original opinion covers all of the points raised except the contention of Hubbard that Gehring should be held to indemnify Hubbard for any amount it might be required to pay Strakos. We have held that Gehring's duty to protect the traveling public ended when his work was accepted by Harris County with full knowledge of the unguarded post holes. Since Gehring was not negligent in so far as Strakos was concerned, he cannot be required to contribute to the satisfaction of the judgment against Hubbard. Patterson v. Tomlinson, Tex.Civ. App., 118 S.W.2d 645, error ref.

Hubbard, however, complains that he is entitled to be indemnified by Gehring under his pleadings and the answers made by the jury to certain special issues.

While the jury found that Gehring failed to notify Hubbard that he had left the hole into which Strakos stepped and that such failure was negligence and a proximate cause of the occurrence in question, such findings have no effect on the judgment the court is required to enter. The failure to warn Hubbard was not a proximate cause of the injuries to Strakos for the reason that such result is not one of the consequences reasonably to be foreseen as a result of such conduct. Baughn v. Platt, 123 Tex. 486, 72 S.W.2d 580. In the absence of such proximate causation there can be no indemnity. Eastern Texas Electric Co. v. Rhymes et al., Tex.Civ.App., 1 S.W.2d 688, error dism.

"In order that a person who has paid damages may be entitled to indemnity from another, it is essential that such other should be the one who is primarily responsible for the negligence or wrongful act which caused the injury. * * * Where a person is not primarily responsible for the act or wrong which causes the injury, there is no liability on his part to indemnify the one who has paid the damages; and a person is not entitled to indemnity for payments made by him on a judgment against him for injuries to a third person, where it is apparent that the judgment was based on his own negligence or wrong or that of his employees." 42 C.J.S. Indemnity § 23, pp. 600–601.

The acts or wrongs which caused the injuries to Strakos were the failure of Hubbard to properly protect the public from the dangers attendant on the existence of a concealed hole in the right of way. The judgment was based on the negligence of Hubbard, not of Gehring.

All motions for rehearing are denied.

**778**

On Second Motion for Rehearing.

N. M. Hubbard, Inc. has filed a second motion for rehearing in which it requests this Court to file findings of fact and conclusions of law with respect to the action of this Court in denying their motion for supplemental record.

The motion filed in this Court on March 14, 1961 moved this Court to direct Hon. Lewis Dickson, Judge of the 125th District Court of Harris County, Texas, to receive and act upon, and to allow or disallow, supplemental bills of exception.

Rule 381, T.R.C.P., provides:

"(a) When an appeal is taken from a judgment rendered in a civil cause tried in either the district court, county court, or county court at law, the party appealing shall have fifty days after the rendition of final judgment or order overruling motion for new trial, if such motion is filed, or perfection of writ of error, within which to prepare and file his statement of facts and bills of exception in the trial court.

"(b) Upon application of the party appealing, the judge of the court may, in term time or vacation, for good cause shown, extend the time for filing such statement of facts and bills of exception, but the time shall not be extended in any case so as to delay the filing thereof beyond the time for filing the transcript, bills of exceptions, and statement of facts in the Court of Civil Appeals, as prescribed by these rules or as extended by said court."

No application to extend time for filing bills of exception was timely filed. The motion shows on its face that the bills of exception have not been filed in the trial court or acted on by the trial judge. The time for filing bills of exception has long passed. In Galveston, H. & S. A. Ry. Co. v. Perkins, Tex.Civ.App., 73 S.W. 1067, 1068, the court said:

"The office of a writ of certiorari from this court is to correct the record filed here, which is imperfect by reason of a failure to send up a correct copy of the papers on file in the trial court. It cannot be used to create a record that does not exist, and which, under the plain terms of the law, cannot be created."

We believe the present motion falls within the spirit of the rule there discussed. The motion is denied. Archer v. Skelly Oil Co., Tex.Civ.App., 314 S.W.2d 655, error ref., n. r. e., Tex.Civ.App., 317 S.W.2d 47; Johnson v. Brown, Tex.Civ.App., 218 S.W.2d 317, error ref., n. r. e.

The second motion for rehearing is denied.